GILBERTO RAMOS, ANA M. RAMOS y OTROS, demandantes, *v.* JUAN ORTIZ ROLLET y OTROS, demandados y recurridos, y NATIONWIDE INSURANCE Co., tercera demandada y recurrente.

*Número:* RE-94-45          *Resuelto:* 13 de febrero de 1995

*Luis A. Lugo, Jr.*, abogado de la recurrente; *José A. Rodríguez Jiménez*, abogado de la recurrida.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

# I

El 25 de junio de 1991 ocurrió un accidente entre la Dodge Van, de 1978, conducida por Juan Ortiz Rollet y el vehículo Toyota, de 1986, manejado por su dueño Gilberto Ramos; éste iba acompañado por Juan Betancourt y Jorge Fuentes Rivera. La guagua Dodge era propiedad de Rafael Contador Lemus. Ortiz Rollet la conducía debidamente autorizado en gestiones para su patrono Precision Instruments Service, Inc., (en adelante Precision Instruments) del cual Contador Lemus era presidente.

Con motivo del accidente, Ramos, Betancourt y Fuentes Rivera demandaron a Ortiz Rollet, Contador Lemus, Precision Instruments y a la Universal Insurance Co. (en adelante Universal). Luego de varios trámites, los demandados aceptaron su negligencia y presentaron una demanda de tercero contra la Nationwide Insurance Co. (en adelante Nationwide). En síntesis, alegaron que la Dodge causante del accidente se utilizaba en ese momento como vehículo *sustituto* de una Ford Van de 1985 que estaba en reparación y asegurada por Nationwide. Adujeron que la cubierta de Nationwide se extendía al Dodge. Nationwide rechazó esa pretensión.

Subsiguientemente, el Tribunal Superior, Sala de San Juan (Hon. Melvin A. Padilla Feliciano, J.), mediante una sentencia sumaria parcial dispuso que de probar los demandantes Ramos *et al.* algún daño, Universal y Nationwide responderían en cincuenta (50%) por ciento cada una. No conforme, recurrió ante nos Nationwide.

# II

De entrada, Nationwide señala la existencia de unas controversias fácticas en torno a las pólizas. Inicialmente, llama nuestra atención a su póliza 88-CA-399-492 la cual, al mencionar *automóviles cubiertos*, señala que "no incluye

un vehículo propiedad de o registrado a nombre de cualquier socio u oficial ejecutivo del asegurado nombrado, a menos que específicamente se exprese de otra forma mediante endoso que forme parte de esta póliza". (Traducción nuestra.)(¹) Solicitud de revisión, Apéndice, pág. 42. En virtud de esa terminología, arguye que el vehículo Dodge causante del accidente no estaba cubierto, pues estaba registrado y era propiedad de Contador Lemus, presidente de su asegurada Precision Instruments. Aduce, además, que faltó el endoso específico requerido para hacer extensiva la cubierta.

Al respecto apunta que, "[c]omo regla general, las pólizas de automóvil no permiten la sustitución del vehículo asegurado por otro que sea propiedad del mismo asegurado o de cualquier residente en su hogar y/o propiedad de los socios o ejecutivos de dicho asegurado si se trata de una empresa". Alegato de la recurrente, págs. 6–7. Invoca la definición de *automóvil sustituto temporero*, a saber, aquél "no perteneciente al asegurado nombrado o cualquier residente de su mismo hogar [*household*], mientras se use temporeramente con el permiso del dueño como un sustituto del automóvil (propiedad del dueño) cuando éste haya sido retirado del uso normal para efectos de servicios o reparación o por su ruptura [*breakdown*], pérdida o destrucción."(²) Solicitud de revisión, Apéndice, pág. 43.

A su juicio, hay controversia de si efectivamente la Ford estaba en reparación y que tal hecho no podía establecerse solamente a base de una declaración jurada de Contador

---

(¹) En inglés:

"but '*covered automobile*' does not include a vehicle owned or registered in the name of any individual partner or executive officer of the named insured, unless specifically stated otherwise by endorsement forming a part of the policy ...." Solicitud de revisión, Apéndice, pág. 42.

(²) En inglés lee:

" '*temporary substitute automobile*' means an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction ...." Solicitud de revision, Apéndice, pág. 43.

Lemus, sino que Precision Instruments tenía que someter la documentación pertinente del negocio.

Finalmente, Nationwide nos subraya que, contrario a su póliza, la de Universal cubría *específicamente* los vehículos que no eran propiedad de Precision Instruments, incluso aquellos de sus empleados y usados en gestiones de la empresa.([3]) Enfatiza que su póliza cubría sólo la Ford Van; antes bien, excluía específicamente cualquier vehículo perteneciente a un socio o ejecutivo de la empresa, como lo era la Dodge Van de Contador Lemus. Aduce el principio enunciativo de que cuando una póliza general y otra especial cubren una pérdida en particular, aquella que la cubre específicamente es *primaria* y la general es en exceso, aunque ambas expresen que cubren sólo su responsabilidad en exceso (*excess liability*).

## III

Los argumentos de Nationwide no nos persuaden. Al examinar íntegramente su póliza, es claro que, al igual que la póliza de Universal, cubría este accidente. Podía, pues, el ilustrado tribunal de instancia, en ausencia de controversias de hechos, sumariamente dictaminar que Nationwide y Universal responderían en cincuenta por ciento (50%) cada una. Nos explicamos.

*Primero*, la póliza de Nationwide cubría el vehículo Ford Van *o cualquiera otro sustituto*. Así se colige inicialmente

---

([3]) La póliza de Universal Insurance Co. (en adelante Universal), al dar cubierta a vehículos que no son propiedad del asegurado, los define como "[s]ólo aquellos automóviles de los cuales usted no sea dueño, arriende [*lease*], alquile [*hire*] o coja prestados, que son usados en conexión con su negocio. Esto incluye automóviles propiedad de sus empleados o miembros de sus familias pero sólo mientras sean utilizados en su negocio o sus asuntos personales". (Énfasis suprimido y traducción nuestra.) Solicitud de revisión, Apéndice, pág. 39.

El texto en inglés consigna:

"Only those autos you do not own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs." (Énfasis suprimido.) Solicitud de revisión, Apéndice, pág. 39.

de la cubierta de responsabilidad (*Basic Automobile Liability Insurance*), *que es bajo la cual aquí se reclama*, al especificar que "personas aseguradas" incluye a "cualquier otra persona mientras utilice un vehículo propiedad del asegurado [*owned automobile*] *o un automóvil sustituto temporero* con el permiso del asegurado nombrado ...."(⁴) (Traducción y énfasis nuestros.) Según señalado, la cláusula contiene una definición de automóvil *sustituto temporero*, la cual Nationwide sostiene que no incluye el vehículo involucrado en el accidente, pues dicho vehículo era propiedad de un socio u oficial ejecutivo de Precision Instruments. Estos vehículos, según su interpretación de la cláusula pertinente de la póliza, no pueden ser considerados "automóviles sustitutos temporeros".

Esa cláusula no tiene tal alcance. Los automóviles excluidos de la definición de "sustitutos temporeros" son aquellos *propiedad del asegurado o de cualquier residente de la misma familia*. En ningún momento se excluyen los vehículos propiedad de socios o ejecutivos de la asegurada Precision Instruments. Ese propósito —excluir vehículos propiedad de los ejecutivos— requiere un señalamiento específico en la definición, tal como se hizo en la correspondiente a "automóvil cubierto" de la Sección I de la misma póliza, pertinente a daños físicos al automóvil (*Automobile Physical Damage Insurance*) donde, según indicado, se expresa que dicho término *no incluye los vehículos propiedad de o registrados a nombre de cualquier socio u oficial ejecutivo del asegurado*.

Concluimos, por lo tanto, que el vehículo Ford involucrado en el accidente era uno "sustituto temporero" *cubierto*, pues no pertenecía a la asegurada Precision Instruments, sino a su presidente Contador Lemus, y además, se

---

(⁴) El texto en inglés de esta cláusula dispone, en lo pertinente:
"... any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured ..." Solicitud de revisión, Apéndice, pág. 43.

demostró que era utilizado como sustituto en lo que el vehículo asegurado era reparado.

Contrario a lo propugnado por Nationwide, la definición de "auto cubierto" que excluye a aquellos que son propiedad de o registrados a nombre de socios u oficiales ejecutivos, no es aplicable. Esa definición cubre *sólo a reclamaciones por daños físicos* al automóvil, no bajo la cubierta de responsabilidad pública. Únicamente las exclusiones, disposiciones y definiciones contenidas en la cubierta *de responsabilidad pública* son aplicables a esta controversia.

*Segundo*, no tiene razón Nationwide al apuntar que el Tribunal Superior no podía determinar que la Ford Van era reparada, únicamente a base de la declaración jurada que a esos efectos brindó Contador Lemus. Teniendo la oportunidad, ¿por qué no presentó la documentación ni declaraciones que controvirtieran ese hecho, prefiriendo mantener completo silencio, sin replicar? Ciertamente Nationwide no descargó adecuadamente su obligación procesal de derrotar la moción de sentencia sumaria. Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994); *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991).

Coincidimos con Universal que "[e]n forma alguna esta prueba fue controvertida, y si el recurrente deseaba hacerlo, tenía que presentar contradeclaraciones para probar lo contrario. Para establecer el hecho de que el vehículo estaba en reparación no se necesitaba una prueba particular. Bastaba, como se hizo en el presente caso, con la declaración del dueño del mismo que acreditaba ese dato. Más aún debemos señalar que es totalmente creíble, y ocurre diariamente, el hecho de que no se guardan recibos ni documentación relacionada con este tipo de incidente. La práctica generalizada es que esta documentación no se retiene por mucho tiempo y que se dispone

rápidamente de la misma .... Con la Declaración Jurada que se presentó, ese hecho quedó totalmente establecido, y si la recurrente quería controvertirlo tuvo la oportunidad para hacerlo y se cruzó de brazos. No puede quejarse ahora de que se le haya dictado sentencia en su contra cuando propició ello con su inactividad". Alegato de la demandada recurrida Unirersal Insurance Company, pág. 6.(5)

■ Y *tercero*, contrario a la contención de Nationwide, procedía como cuestión de derecho la sentencia sumaria. En situaciones como ésta, la doctrina se inclina a sostener que *ambas aseguradoras responden por partes iguales si tienen cláusulas similares*,(6) estableciendo que para cual-

---

(5) De la declaración de Contador Lemus surge su conocimiento personal de los hechos y la capacidad para declarar. Además, se incluyeron unas copias certificadas de los documentos a los que hizo referencia en su declaración, a saber, las pólizas de Universal y Nationwide Insurance Co. (en adelante Nationwide).

(6) La de la Universal dispone, en lo pertinente:

"B. OTRA CUBIERTA

"1. Para cualquier automóvil cubierto de su propiedad, esta póliza provee cubierta primaria. Para cualquier automóvil cubierto del cual usted no sea propietario, la cubierta provista por esta póliza es en exceso de cualquier otra cubierta de la cual pueda cobrarse ....

"2. Cuando dos o más pólizas cubren a base de lo mismo, sea en exceso o primariamente, nosotros pagaremos sólo nuestra parte. Nuestra parte es la proporción que el límite de nuestra póliza guarda respecto al total de los límites de todas las pólizas que cubren en la misma base." (Énfasis suprimido y traducción nuestra.)

En inglés, el texto transcrito señala:

"B. OTHER INSURANCE

"1. For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance....

"2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis". (Énfasis suprimido.)

La cláusula equivalente de la póliza de Nationwide:

"VIII. CONDICIONES ADICIONALES

"A. Otra Cubierta-Sustitutos Temporeros y Automóviles Recientemente Adquiridos

"Con respecto a un automóvil sustituto temporero, esta cubierta será seguro en exceso de cualquier otra póliza válida y de la cual pueda cobrarse, disponible al asegurado." (Énfasis suprimido y traducción nuestra.)

La misma cláusula, en inglés, expresa:

"VIII. ADDITIONAL CONDITIONS

"A. Other Insurance-Temporary Substitute and Newly Acquired Automobiles

quier automóvil cubierto por la póliza, que no sea propiedad del asegurado, la cubierta será considerada "en exceso" de cualquiera otra cubierta aplicable.

■ Diversas jurisdicciones norteamericanas han resuelto consistentemente, en controversias similares, *que ambas cláusulas deben rechazarse y que las pólizas responderán por partes iguales en proporción al límite de su cubierta.* Recientemente la Corte de Apelaciones de Carolina del Norte explicó así el alcance de esta tendencia en *Aetna Cas. & Sur. v. Continental Ins.*, 429 S.E.2d 406, 409 (1993), esto es, cuando dos (2) cláusulas de este tipo chocan "no se le da efecto a ninguna. En otras palabras, las pólizas son tratadas como si no contuvieran cláusulas de 'otra cubierta' ['other insurance']. Por lo tanto, el pago por la pérdida debería ser compartido entre los aseguradores tal como sería compartido en el caso donde ninguna póliza contuviera una cláusula de 'otra cubierta', i.e., el pago por la pérdida debería ser prorrateado". (Traducción nuestra.) Véanse: *Underwriters at Lloyd's, London v. Pike*, 977 F.2d 1278 (8vo Cir. 1992); *National Indemnity v. Continental Ins.*, 487 A.2d 1191 (1985); *Reliance Ins. Co. v. St. Paul Surplus Lines Ins.*, 753 F.2d 1288 (4to Cir. 1985); *Alliance Mut. Ins. Co. v. New York Cent.*, 318 S.E.2d 524 (1984); *Home Ins. Co. v. Certain Underwriters at Lloyd's*, 729 F.2d 1132 (7mo Cir. 1984); *Continental Cas. Co. v. Pacific Indem. Co.*, 184 Cal.Rptr. 583 (1982); *IBM World Trade v. Granite State Ins. Co.*, 455 N.Y.S.2d 914 (1982); *Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co.*, 195 F.2d 958 (9no Cir. 1952); 16 *Couch on Insurance 2d (Ed. rev.)* Sec. 62:80, págs. 551–552 (1983); J.L. Welch, *Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies*, 20 Hastings L.J. 1292 (1969); J.L. Mattison, *"Other Insurance" Clauses: The Lamb-Weston Doc-*

---

"With respect to a temporary substitute automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured." (Énfasis suprimido.)

*trine*, 47 Or. L. Rev. 430 (1968); Comentario, *"Other Insurance" Clauses Conflict*, 5 Stan. L. Rev. 147 (1952).

## IV

■ Nationwide nos insta, sin embargo, a rechazar esa solución y que impongamos la responsabilidad únicamente a Universal a base de la doctrina que propugna que la póliza primaria debe ser la que cubra específicamente la pérdida. Veamos.

> Hay autoridades que señalan que cuando las cubiertas de una póliza general y una especial se traslapan para ambas cubrir la pérdida sufrida, la póliza que específicamente cubre la pérdida es primaria y la póliza general es cubierta en exceso, si bien ambas pólizas proveen que sólo asumen responsabilidad en exceso. En otras palabras, la póliza primaria es aquella que cubre específicamente la pérdida, en contraste con la visión de que donde ambas pólizas pretenden ser en exceso, las cláusulas en exceso no tienen efecto y los aseguradores son de forma concurrente. (Traducción nuestra y escolio omitido.) *Couch*, supra, Sec. 62:83, pág. 559.

¿Están las pólizas de Universal y Nationwide en dicha relación especial-general? Analicemos.

Para sostener que la póliza expedida por Universal es la específica —y debe responder— Nationwide se ampara en el punto 9 del acápite 3 de la hoja de declaraciones (*nonowned autos only*) que extiende la cubierta a automóviles que son propiedad de los empleados o miembros de sus hogares mientras sean utilizados en el negocio o asuntos personales del asegurado. Colige que la cubierta de Universal era específica, mientras que la suya "cubría *específicamente* la Ford Van de 1985 y *ningún otro vehículo*. Dicha póliza excluía específicamente cualquier vehículo perteneciente a un socio o ejecutivo de la empresa; por lo que la Dodge Van de 1978 estaba excluida por pertenecer al Presidente de la asegurada, Precision Instruments". (Énfasis en el original.) Alegato de la recurrente, págs. 9–10.

Al analizar las pólizas vemos, primeramente, que la de Nationwide cubría la Ford Van de 1985 y, conforme lo expresamente señalado en el endoso CP0315, *cualquier automóvil sustituto temporero.* Según expresado, contrario a la contención, no excluía específicamente los vehículos pertenecientes a los socios o ejecutivos de la empresa. Dicha exclusión es específica en cuanto a los daños físicos al automóvil, no en lo concerniente a la responsabilidad pública. Más aún, el lenguaje usado abona a una conclusión en contrario, esto es, incluir los vehículos pertenecientes a los socios o ejecutivos de la empresa. Así incluye, entre personas aseguradas, "cualquier socio u oficial ejecutivo, pero con respecto a un automóvil sustituto temporero sólo mientras dicho automóvil se utilice en el negocio del asegurado nombrado". (Traducción nuestra.)([7]) Solicitud de revisión, Apéndice, pág. 43.

Más adelante, al definir los *no asegurados*, señala: "excepto lo provisto bajo el (b) arriba, el dueño de un automóvil sustituto temporero o cualquier agente o empleado de dicho dueño". (Traducción nuestra.)([8]) Solicitud de revisión, Apéndice, pág. 43. Lo provisto en el inciso (b) es la cláusula que incluye como asegurados a los socios u oficiales ejecutivos de la empresa.

Como cuestión de realidad, a renglón seguido el inciso (c), pertinente a los socios u oficiales ejecutivos, incluye como asegurado "cualquier otra persona mientras utilice un vehículo propiedad del asegurado [*owned automobile*] o un automóvil sustituto temporero con el permiso del asegurado nombrado, siempre que su actual operación o (si no lo está operando) su otro uso actual esté dentro del ámbito

---

([7]) La cláusula, en inglés, dispone:

"... any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such automobile is being used in the business of the named insured ..." Solicitud de revisión, Apéndice, pág. 43.

([8]) Dispone:

"... except as stated under (b) above, the owner of a temporary substitute automobile, or any agent or employee of such owner ..." Solicitud de revisión, Apéndice, pág. 43.

de dicho permiso ...". (Traducción nuestra.)(⁹) Solicitud de revisión, Apéndice, pág. 43.

Del estudio armonioso de estas cláusulas se desprende, no sólo la intención de cubrir específicamente a los socios o ejecutivos oficiales siempre que utilicen los vehículos sustitutos temporeros —incluso los de su propiedad— en gestiones del negocio del asegurado, sino a cualquier otra persona que use un vehículo del asegurado o uno sustituto temporero, dentro del ámbito del permiso concedido.

■ El hecho de que el lenguaje de la cláusula de Universal sea más claro no puede operar en su contra para beneficio de Nationwide. En recta lógica adjudicativa, no podemos premiar su falta de claridad. Después de todo, "[l]a interpretación de las cláusulas obscuras de un contrato no deberá favorecer a la parte que hubiese ocasionado la obscuridad". Art. 1240 del Código Civil, 31 L.P.R.A. sec. 3478. *Zequeira v. CRUV*, 83 D.P.R. 878, 883 (1961).

Si bien el lenguaje de Universal es más claro —y quizás por ello Nationwide entiende también más "específico"— Universal emitió una póliza general que *no aplica específicamente* a ningún vehículo particular, mientras que la de Nationwide sí aplica para la Ford Van de 1985 o cualquier *otro vehículo que la sustituya.*

Además, resulta de dudosa aplicación la doctrina de "póliza específica"; no cabe hablar de una más específica que la otra, sino además porque la situación fáctica que configura dicha doctrina —según las propias autoridades y jurisprudencia citadas por Nationwide— es distinta a la del caso de autos. Versan sobre pólizas de dos (2) asegurados distintos, esto es, el conductor del vehículo accidentado tiene una póliza y el dueño otra. *Aquí es diferente; se trata del mismo asegurado con dos (2) pólizas distintas.*

---

(⁹) Consigna:

"... any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission ...." Solicitud de revisión, Apéndice, pág. 43.

■ *Finalmente*, debemos puntualizar que la doctrina de "póliza específica", como se colige de la cita de Couch, aunque sostenida por algunas autoridades, necesariamente no es la mayoritaria:

> El conflicto podría surgir cuando cada póliza especifica que provee sólo cubierta en exceso, ya que, si se diera efecto literal a ambas cláusulas de cubierta en exceso de las pólizas aplicables, ninguna cubriría la pérdida y dicho resultado podría producir un absurdo no pretendido.
>
> Para evitar un problema de ese tipo, muchos tribunales imponen alguna responsabilidad ....
>
> *Hay una tendencia creciente en el cuadro completo de rechazar el razonamiento circular, más prevaleciente antes, por medio del cual a la cláusula restrictiva de una póliza se le da efecto prioritario, o una de dos pólizas que proveen cubiertas bajo diferentes hipótesis es reputada "específica", y por eso constituye la cubierta "primaria".* (Traducción y énfasis nuestros.) *Couch,* supra, Sec. 62:79, págs. 548–550.

Por los fundamentos expuestos, *concluimos que no erró el juez de instancia al dictar la sentencia sumaria parcial y determinar que las cláusulas de la póliza de responsabilidad pública, dispositivas de que responderán sólo en el exceso, deben cancelarse; por ende, de probarse los daños en su día, cada una deberá responder en cincuenta (50%) por ciento.*

*Se dictará sentencia confirmatoria.*

El Juez Presidente Señor Andréu García disintió sin opinión escrita.