EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wanda Monteagudo Pérez, et al<br>Demandante<br><br>v.<br><br>Estado Libre Asociado de P.R.<br>Universal Insurance Company<br>Demandada-Peticionaria<br><br>v.<br><br>Antilles Insurance Company<br>Demandada-recurrida<br><br>Edwin Ferrer Montalvo, et al<br>Demandante<br><br>v.<br><br>Estado Libre Asociado de P.R.<br>Universal Insurance Company<br>Demandada-peticionaria<br><br>v.<br><br>Antilles Insurance Company<br>Demandada-recurrida<br><br>Ramonita Rivera Cintrón, et al<br>Demandante<br><br>v.<br><br>Estado Libre Asociado de P.R.<br>Universal Insurance Company<br>Demandada-peticionaria<br><br>v.<br><br>Antilles Insurance Company<br>Demandada-recurrida | Certiorari<br><br>2007 TSPR 153<br><br>172 DPR ____ |

Número del Caso: CC-2000-799

Fecha: 16 de agosto de 2007

Tribunal de Apelaciones:

    Región Judicial de Aguadilla/Mayagüez

Juez Ponente:

    Hon. Jorge L. Escribano Medina

Abogado de la Parte Peticionaria:

    Lcdo. Plinio Pérez Marrero

Abogado de la Parte Recurrida:

                         Lcdo. Anselmo Irizarry Irizarry

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda Monteagudo Pérez, *et al*
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.                              CC-2000-799

Antilles Insurance Company
Demandada-recurrida

Edwin Ferrer Montalvo, et al
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.

Antilles Insurance Company
Demandada-recurrida

Ramonita Rivera Cintrón, *et al*
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.

Antilles Insurance Company
Demandada-recurrida

Opinión del Tribunal emitida por la Jueza Asociada señora
FIOL MATTA

En San Juan, Puerto Rico, a 16 de agosto de 2007.

Este caso nos brinda la oportunidad de desarrollar

normas para interpretar las cláusulas de "otro seguro"

incluidas en los contratos de seguro de nuestra jurisdicción. Además, establecemos que la responsabilidad asumida por un asegurado de proveer cubierta de seguro a otra parte, instituyéndola como asegurada adicional en su póliza, no puede afectar la responsabilidad asumida contractualmente por su aseguradora.

I

Las tres demandas sobre daños y perjuicios presentadas en este caso fueron consolidadas el 30 de enero de 1997. Los demandantes alegaron que el 13 de enero de 1996 ocurrió un accidente entre un vehículo "pick-up" modelo GMC, tablilla 545-312, año 1995 y un Chevrolet Lumina, año 1990. Alegaron, además, que el primer vehículo era conducido por el agente Jorge Negrón Figueroa del Departamento de la Policía del Estado Libre Asociado de Puerto Rico (ELA), que el accidente fue causado sólo por la negligencia de dicho agente y que en el mismo murieron varias personas.

El vehículo modelo GMC fue alquilado por el ELA a Cabrera Rental de Arecibo (Cabrera Hermanos) a través del contrato de arrendamiento núm. 2369. En dicho contrato el ELA se comprometió a indemnizar a Cabrera Hermanos por cualquier pérdida, costo, daño o riesgo de cualquier naturaleza que resultara del arrendamiento del vehículo y a proveer una cubierta de seguro de responsabilidad primaria por daños físicos y de propiedad, en la cual se instituyera a Cabrera Hermanos como asegurado adicional.

Al ocurrir el accidente la compañía aseguradora Antilles Insurance Company (Antilles) tenía expedida una póliza para cubrir el riesgo de Cabrera Hermanos y sus arrendatarios. Por su parte, la compañía aseguradora Universal Insurance Company (Universal) había expedido una póliza para cubrir el riesgo del ELA. Ambas pólizas cubrían el riesgo de responsabilidad de sus asegurados con relación al vehículo alquilado y tenían un límite de responsabilidad de $500,000.00.

Una vez consolidadas las demandas, las partes presentaron en el Tribunal de Primera Instancia una estipulación para transigir el pleito. Entre otras cosas, estipularon que los demandados pagarían $585,000.00 a los demandantes, quienes a su vez relevaban a los primeros de toda reclamación o causa de acción que surgiera o pudiera surgir de los hechos alegados en las demandas; que el pago de la suma indicada no se interpretaría como una admisión de responsabilidad de los demandados; que la sentencia se dictaría sin especial condena de costas e intereses y que los honorarios de los abogados serían pagados por sus representados. Además, estipularon que las compañías aseguradoras Antilles y Universal continuarían litigando entre sí para que el Tribunal determinara la proporción en que éstas habrían de contribuir al pago de la sentencia **conforme a los términos de sus pólizas y a la prioridad de responsabilidad que adjudicara el Tribunal.**

El Tribunal de Primera Instancia nombró al Comisionado de Seguros del Estado Libre Asociado de Puerto Rico (Comisionado de Seguros) como *amicus curiae* y condicionó la aceptación de la estipulación presentada por las partes a que las compañías aseguradoras Antilles y Universal presentaran sus posiciones al Comisionado para que éste informara al Tribunal su opinión respecto a la proporción en que cada una de estas compañías debía contribuir al pago, conforme a los términos de sus pólizas.

Las compañías aseguradoras demandadas consignaron el pago de la transacción estipulada. La compañía aseguradora de la Autoridad de Carreteras del Estado Libre Asociado de Puerto Rico, General Accident Insurance Company (General Accident), consignó $29,250.00. La compañía Antilles consignó $275,000.00 y Universal $277,875.00. Posteriormente, las partes presentaron una Estipulación Suplementaria en la cual relevaron de responsabilidad a la Autoridad de Carreteras y su compañía aseguradora General Accident, solicitaron al Tribunal que desglosara los fondos consignados y acordaron que una vez se resolviera la acción entre Antilles y Universal la compañía que resultara perdedora reembolsaría a la compañía victoriosa la cantidad de dinero que la última hubiera consignado sin estar obligada a hacerlo.

En su comparecencia especial como *amicus curiae* y luego de haber evaluado las respectivas pólizas y los informes periciales presentados por las compañías

aseguradoras, el Comisionado de Seguros concluyó que la responsabilidad de proveer cubierta primaria correspondía a Antilles y que Universal debía proveer cubierta en exceso. El Tribunal de Primera Instancia llegó a la misma conclusión, ordenándole a Antilles devolver a Universal la cantidad de $222,125.00, sin especial imposición de costas, ni honorarios de abogados.

Ambas compañías aseguradoras recurrieron de la sentencia emitida por el Tribunal de Primera Instancia; consolidadas ambas, el entonces Tribunal de Circuito de Apelaciones revocó. Concluyó ese foro apelativo que ambas pólizas cubren el vehículo arrendado a nivel primario. La compañía aseguradora Universal recurre entonces ante este Tribunal señalando que el tribunal apelativo erró al así resolver pues ello implica que Antilles puede subrogarse contra su asegurado; también aduce que el foro apelativo erró al no resolver que Antilles no había depositado la suma que le correspondía de acuerdo a la estipulación y al no imponerle a Antilles el pago de intereses y honorarios por temeridad. En su alegato, la compañía recurrida, Antilles, argumenta que el tribunal apelativo no cometió los errores señalados por Universal. Al estar el caso sometido en los méritos, pasamos a resolver.

II

Coinciden en este caso dos contratos, el de transacción judicial y el de seguro, que hemos atendido en

gran detalle anteriormente. El primero incide en los procesos judiciales y al incorporar una renuncia bilateral de derechos, requiere mucha atención en su interpretación.[1] En cuanto al contrato de seguro hemos establecido que está altamente imbuido de interés público. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 901 (1994).

Sabemos que una vez la transacción judicial es incorporada al pleito y aprobada por el tribunal, tendrá la autoridad de cosa juzgada y las partes deberán considerar los puntos discutidos como definitivamente resueltos. Art. 1715 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4827. Véase además, Igaravidez López v. Ricci Asencio, supra; Neca Mortgage Corporation v. A & W Developers S.E., supra, pág. 871-872; Citibank, N.A. v. Dependable Insurance Company, Inc., 121 D.P.R. 503, 516 (1988). Ahora bien, hemos establecido que se debe interpretar una transacción judicial de manera restrictiva, comprendiendo ésta sólo los objetos expresados determinadamente en el acuerdo, o que por inducción necesaria de sus palabras deban reputarse comprendidos en éste. A su vez, se entenderá que se

---

[1] La transacción es un contrato por el cual las partes, mediante concesiones recíprocas, evitan un pleito o ponen fin al que había comenzado. Hay dos clases de contratos de transacción, el judicial y el extrajudicial. Art. 1709 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4821. Véase además, Neca Mortgage Corporation v. A & W Developers S.E., 137 D.P.R. 860, 870 (1995); Igaravidez López v. Ricci Asencio, 147 D.P.R. 1, 5-6 (1998). El contrato de transacción judicial surge después de comenzado el proceso judicial; las partes solicitan entonces incorporar sus acuerdos al proceso en curso para ponerle fin a la controversia que lo generó. Igaravidez López v. Ricci Asencio, supra, pág. 6.

renuncian sólo aquellos derechos que tengan relación con la controversia que se ha transigido. Art. 1714 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4826. Véase además, Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, 2006 T.S.P.R. 47; Citibank, N.A. v. Dependable Insurance Company, Inc., supra, pág. 514; Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 787-788 (1981).

Tratándose de un contrato, a la transacción judicial le aplican las normas generales de interpretación de contratos en cuanto no sean incompatibles con las normas específicamente relacionadas a los contratos de transacción. Citibank, N.A. v. Dependable Insurance Company, Inc., supra, págs. 514-515. Por tanto, si los términos de la transacción son claros y no dejan dudas sobre la intención de las partes, se le dará a sus cláusulas el sentido literal que de ellas se desprenda. Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471. Véase además, S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713, 725-726 (2001).

Por su parte, el contrato de seguro se encuentra reglamentado en el Código de Seguros de Puerto Rico, Ley núm. 77 de 19 de junio de 1957, 26 L.P.R.A. sec. 101 et seq.[2] El Código define el contrato de seguro como aquél

---

[2] Debido a que el Código de Seguros aprobado en 1957 proviene de la experiencia obtenida en diferentes jurisdicciones de los Estados Unidos, la jurisprudencia estadounidense tiene un efecto persuasivo en el desarrollo de nuestro Derecho de Seguros:

mediante el cual una persona se obliga a indemnizar, pagarle o proveerle un beneficio específico o determinable a otra persona cuando se produce un suceso incierto previsto en el mismo; en éste, el asegurado le transfiere al asegurador unos riesgos a cambio de una prima. Art. 1 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 102. Véase además, Cooperativa de Ahorro y Crédito Oriental v. Oquendo Camacho, 158 D.P.R. 714, 721 (2003); Aseg. LLoyd's London v. Cia. Des. Comercial, 126 D.P.R. 251, 266 (1990). El propósito del contrato de seguro es indemnizar y proteger al asegurado en caso de producirse el suceso incierto previsto. Molina Texidor v. Centro Recreativo Plaza Acuática, 2005 T.S.P.R. 172. Véase además, PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, pág. 902; Quiñones López v. Manzano, 141 D.P.R. 139, 155 (1996). Al igual que todo contrato, el contrato de seguro constituye la ley entre las partes. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. 3451. Véase además, Quiñones López v. Manzano, supra, pág. 154; Molina Texidor v. Centro

---

La idea de redactar un Código de Seguros para Puerto Rico se originó en la Superintendencia de Seguros en el año 1950. En el mes de agosto del año 1952 se encomendó la redacción de un ante-proyecto al Lcdo. Robert D. Williams, Asesor del Departamento de Seguros del Estado de Washington, considerado como una autoridad en la materia. El Lcdo. Williams preparó los ante-proyectos de los Códigos de Seguros más modernos de los Estados Unidos: el del estado de Washington, el del estado de Kentucky, y el del estado de Arizona y redactó el ante-proyecto de enmiendas fundamentales al Código de Seguros vigente en el estado de Michigan. Diario de Sesiones de la Asamblea Legislativa, P. de la C. 85, 12 de marzo de 1957, pág. 561.

Recreativo Plaza Acuática, supra; López Castro v. Atlantic Southern Ins. Co., 158 D.P.R. 562, 568 (2003).

También al igual que todo contrato, el de seguro debe interpretarse globalmente, a partir del conjunto total de sus términos y condiciones, según se expresen en la póliza[3] y según se hayan ampliado, extendido o modificado dichos términos por cualquier aditamento, endoso[4] o solicitud que sean añadidos a la póliza para formar parte de ésta. Art. 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1125. Véase además, Quiñones López v. Manzano, supra, pág. 154; Molina Texidor v. Centro Recreativo Plaza

---

[3] El ex Comisionado de Seguros, Lcdo. Rolando Cruz, define el término "póliza" en su libro de Derecho de Seguros de la siguiente manera:

> Póliza (Policy)— Se refiere al contrato por escrito mediante el cual una parte, el asegurador, se compromete, a cambio del pago de una prima, a indemnizar a un tercero, por lo general al asegurado o un reclamante, por una pérdida contingente al ocurrir un evento futuro incierto previsto. R. Cruz, Derecho de Seguros, San Juan, Publicaciones JTS, 1999, pág. 386-387.

[4] El ex Comisionado de Seguros, Lcdo. Rolando Cruz, define el término "endoso" en su libro de Derecho de Seguros de la siguiente manera:

> Endosos son acuerdos por escrito que se adhieren a la póliza para que forme parte del contrato con el propósito de alterar, ampliar o restringir la cubierta que dispone la póliza. Cruz, op. cit., pág. 368.

En el caso A.A.A. v. Librotex, 142 D.P.R. 820 (1997), explicamos la importancia que tienen los endosos de una póliza:

> La singular importancia de los endosos recae en que estos reflejan la última expresión de las partes y, con marcada frecuencia, sirven de enmienda o nota aclaratoria de alguna cláusula del contrato. A.A.A. v. Librotex, supra, pág. 833.

Acuática, supra; López Castro v. Atlantic Southern Ins. Co., supra. Hemos resuelto que el contrato de seguro es un contrato de adhesión, por lo cual debe interpretarse liberalmente en beneficio del asegurado. Sin embargo, si los términos del contrato de seguro son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, se hará valer la clara voluntad de las partes. Quiñones López v. Manzano, supra, págs. 155-156; Molina Texidor v. Centro Recreativo Plaza Acuática, supra; López Castro v. Atlantic Southern Ins. Co., supra, págs. 568-569; Cooperativa de Ahorro y Crédito Oriental v. Oquendo Camacho, supra, págs. 723-724.

Al determinar cuáles son los riesgos cubiertos por una póliza de seguro, es necesario considerar si en el contrato figura alguna "cláusula de exclusión". Estas cláusulas tienen el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros. Por esta razón, hemos resuelto que las exclusiones se han de interpretar restrictivamente a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada. R. Cruz, Derecho de Seguros, San Juan, Publicaciones JTS, 1999, pág. 167.[5]

---

[5] Respecto a las "cláusulas de exclusión" Couch nos explica:

> Since the contract of insurance is a voluntary contract, the initial premise is that as an aspect of freedom of contract the insurer can insert any exception to coverage that it desires. 7A Couch on Insurance 3d, sec. 108:3 (1999).

Molina Texidor v. Centro Recreativo Plaza Acuática, supra; Marín v. American Internacional Ins. Co., 137 D.P.R. 356, 362 (1994); Rivera Robles v. Ins. Co. of Puerto Rico, 103 D.P.R. 91, 93 (1974). Además, según nos explica el tratadista George J. Couch, la cubierta que provee una aseguradora puede ser a nivel primario o en exceso. La cubierta primaria es aquella que responde por la pérdida una vez ésta ocurre; la cubierta en exceso sólo responde una vez se exceden los límites de responsabilidad de la cubierta primaria. 1, 7 Couch on Insurance 3d, sec. 1:4 (1999).[6]

En el contexto del Derecho de Seguros, otro tipo de cláusula comúnmente utilizada por las compañías aseguradoras son las llamadas **cláusulas de "otro seguro"** (*"other insurance" clauses*). Estas cláusulas limitan la responsabilidad de la aseguradora bajo la póliza, cuando dos o más aseguradoras cubren **el mismo riesgo y la misma pérdida** envuelta en una causa de acción, al **mismo nivel de**

---

[6] Algunas jurisdicciones estadounidenses explican lo que es una cubierta primaria y una cubierta en exceso de la siguiente manera:

> Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. …
> 'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. (Énfasis suplido) Olympic Ins. Co. v. Employers Surplus Lines Ins. Co., 126 Cal.App.3d 593, 597-598 (1981) Travelers Casualty and Surety Company v. American Equity Insurance Company, 93 Cal.App.4th 1142, 1149 (2001).

**cubierta**. En esos casos, los términos de esa cláusula determinan la responsabilidad de cada aseguradora. Al respecto señala Couch:

> Insurance policies, particularly liability policies, commonly contain "other insurance" clauses that limit an insurer's liability where other insurance may cover the same loss.
> Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss.
> … **Where such clauses are in effect, each insurer's ultimate liability "is generally determined by the explicit provisions of the respective 'other insurance' clauses."** (Énfasis suplido) 15 Couch on Insurance 3d, sec. 219:1 (1999). Véase además, General Star National Ins. Corp. v. World Oil Co., 973 F.Supp. 943, 948 (1997), Planet Ins. Co. v. ERTZ, 920 S.W.2d 591, 593 (1996). [7]

Las cláusulas de "otro seguro" no afectan los derechos del asegurado, ya que sólo gobiernan la relación interna entre las aseguradoras. Por eso, se pueden aplicar válidamente cuando dos aseguradoras cubren el mismo riesgo y la misma pérdida envuelta en una causa de acción. 15 Couch on Insurance 3d, sec. 219:1 (1999).[8] Véase además,

---

[7] Además, el tratadista Couch nos explica:

> Most liability insurance policies contain "other insurance" clauses that attempt to limit the insurer's liability where other insurance covers the same risk. Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss. Historically, "other insurance" clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a given loss. **Where such clauses are in effect, each insurer's ultimate liability "is generally determined by the explicit provisions of the respective "other insurance" clauses.** (Énfasis suplido) 15 Couch on Insurance 3d, sec. 218:5 (1999). Véase además, 22 Holmes' Appleman on Insurance 2d, sec. 140.1 (2003).

[8] En específico Couch nos aclara:

Employers Insurance Company of Wausau v. Team, Inc., 824 N.Y.S.2d 768 (2006); Travelers Casualty and Surety Company v. American Equity Insurance Company, 93 Cal.App.4th 1142, 1149-1150 (2001); Graphic Arts Mutual Insurance Company v. Essex Insurance Company, 465 F.Supp.2d 1290, 1294 (2006).

En general, existen tres tipos de cláusulas de "otro seguro", éstas son: la cláusula de exceso, la cláusula a prorrata y la cláusula de escape. En lo pertinente a este caso, la **"cláusula de exceso"** convierte a una cubierta primaria en cubierta en exceso cuando otra póliza primaria cubre el mismo riesgo. La **"cláusula a prorrata"** provee que cuando el asegurado tenga otro seguro que cubra el mismo riesgo, la aseguradora sólo responderá por la porción de la pérdida que corresponda al límite de responsabilidad establecido en su póliza, con relación al total de límites de responsabilidad aplicable a todos los seguros que cubren el mismo riesgo. 15 Couch on Insurance 3d, sec. 219:5 (1999). Véase además, National Indemnity Co. v. Continental Ins. Co., 487 A.2d 1191, 1193 (1985); Olympic Ins. Co. v. Employers Surplus Lines Ins. Co., 126 Cal.App.3d 593, 598 (1981).

Cuando dos o más aseguradoras tienen cláusulas de exceso en sus contratos de seguro, es necesario interpretarlas y determinar si son conciliables. Hemos

'Other insurance' clauses govern the relationship between insurers, they do not affect the right of the insured to recover under each concurrent policy." 15 Couch on Insurance 3d, sec. 219:1 (1999).

resuelto que cuando ambas cláusulas son irreconciliables, éstas no tendrán efecto jurídico y la responsabilidad entre las aseguradoras será prorrateada. Ramos v. Ortiz Rollet, 137 D.P.R. 981, 988-989 (1995).[9] Por el contrario, si las cláusulas no son incompatibles tendrán efecto y determinarán la responsabilidad de cada aseguradora. American Economy Ins. Co. v. Motorists Mutual Ins. Co., 593 N.E.2d 1242, 1245-1246 (1992); Citizens Ins. Co. v. Ganschow, 859 N.E.2d 786, 793-795 (2007); Continental Casualty Co. v. Penn National Ins. Co., 128 Fed.Appx. 957, 962 (2005).

Por último y pertinente a este caso, la responsabilidad asumida contractualmente por las aseguradoras no se afecta cuando una parte se ha comprometido por medio de un contrato a proveerle cubierta

---

[9] En Ramos v. Ortiz Rollet, 137 D.P.R. 981 (1995), explicamos:

> Diversas jurisdicciones norteamericanas han resuelto consistentemente, en controversias similares, que ambas cláusulas deben rechazarse y que las pólizas responderán por partes iguales en proporción al límite de su cubierta. Ramos v. Ortiz Rollet, supra, pág. 989.

En particular, Couch nos explica:

> Where two primary policies both contain excess 'other insurance' clauses, the excess clauses are generally treated as mutually repugnant and the loss is pro rated between insurers. 15 Couch on Insurance 3d, sec. 219:47 (1999). Véase además, 22 Holmes' Appleman on Insurance 2d, sec. 140.3 (2003); American Safety Indemnity Co. v. Stolling Trucking Co., Inc. 450 F.Supp.2d 639, 650 (2006); Home Ins. Co. v. Certain Underwriters at Lloyd's London, 729 F.2d 1132, 1136 (1984); Alliance Mutual Ins. Co. v. New York Central Mutual Fire Ins. Co., 318 S.E.2d 524, 525 (1984).

de seguro primaria a otra parte. En estos casos, los términos del contrato de seguro determinarán la responsabilidad de la aseguradora en cuanto al riesgo asumido:

> In modern commerce, it is increasingly common for one party to agree that it will purchase insurance for the protection of another party…. The terms of any such agreement have no impact on the coverage which the insurer must provide, assuming that the insurer has no knowledge of the agreement; **the terms of the actual policy continue to govern the risk which the insurers assumes**. (Énfasis suplido) 7A Couch on Insurance 3d, sec. 103:9 (1999). Véase además, Avilés v. Burgos, 783 F.2d 270, 279 (1986); National Indemnity Co. v. Continental Ins. Co., supra, pág. 1195.

                                III

La transacción judicial aprobada en este caso claramente expresa que la responsabilidad de las aseguradoras Antilles y Universal sería determinada según los términos de sus pólizas. Conforme a la intención de las partes, pasamos a interpretar los contratos de seguro de cada una de las aseguradoras.

El contrato de seguro de Antilles provee una cubierta primaria sobre el riesgo de responsabilidad legal de Cabrera Hermanos como dueño de los automóviles que arrendaba a terceros. La póliza establece un límite de responsabilidad de $500,000.00 por todos los daños, incluyendo los daños físicos y de propiedad ocasionados a terceras personas. Además de tener a Cabrera Hermanos como asegurado principal, la póliza instituye como asegurado

adicional[10] al ELA por medio de un endoso. Dicho endoso provee una cubierta primaria de responsabilidad a los arrendatarios de Cabrera Hermanos, especifica un límite de responsabilidad por daño físico de $50,000.00 y aclara que todos los otros términos de la póliza serán iguales a los establecidos a favor de Cabrera Hermanos.

Por otra parte, el contrato de seguro de Universal provee una cubierta primaria sobre el riesgo de responsabilidad del ELA por el uso de cualquier vehículo de motor de su propiedad o arrendado, con un límite de responsabilidad de $500,000.00 por todos los daños, incluyendo los daños físicos y de propiedad ocasionados a terceras personas. Bajo esta póliza los empleados del ELA son asegurados adicionales.

A base de los términos de los contratos de seguro ambas aseguradoras cubren a nivel primario el mismo riesgo de responsabilidad sobre el vehículo arrendado por el ELA a Cabrera Hermanos y la misma pérdida envuelta en esta causa de acción. Según hemos explicado, ante este tipo de situación muchas compañías aseguradoras utilizan las llamadas "cláusulas de otro seguro" para limitar su responsabilidad.[11] Por esto, es necesario atender la

---

[10] El ex Comisionado de Seguros, Lcdo. Rolando Cruz, nos explica que un asegurado adicional es la persona que no es nombrado expresamente como asegurado en las declaraciones de la póliza, pero que también está cubierto bajo los términos de la misma. Cruz, op. cit., pág. 351.

[11] 15 Couch on Insurance 3d, sec. 219:1 (1999). Véase además, General Star National Ins. Corp. v. World Oil Co.,

cláusula de "otro seguro" incluida los respectivos contratos de seguro de Antilles y Universal. Dicha cláusula es idéntica en ambas pólizas y dispone en lo pertinente:

> **Other Insurance**
> (a) For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
> **(b) Regardless of the provisions of paragraph a. above, this Coverage Forms Liability Coverage is primary for any liability assumed under an "insured contract".**
> (c) When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Esta cláusula contiene tres incisos que deberán ser interpretados y armonizados entre sí para poder determinar la responsabilidad de cada aseguradora concurrente. El inciso (a) es una "cláusula de exceso" idéntica en ambos contratos de seguro. Ésta establece que la aseguradora del dueño del vehículo cubierto (Cabrera Hermanos) proveerá cubierta primaria y la aseguradora del que no sea dueño del vehículo (ELA) proveerá cubierta en exceso. Debido a que las "cláusulas de exceso" incluidas en ambos contratos de seguro son armonizables, éstas tendrán efecto jurídico.

Sin embargo, el inciso (b) de la cláusula de "otro seguro" dispone que **independientemente de lo indicado en el inciso (a) o "cláusula de exceso"**, las aseguradoras proveerán **cubierta primaria** por cualquier responsabilidad

---

973 F.Supp. 943, 948 (1997); Planet Ins. Co. v. ERTZ, 920 S.W.2d 591, 593 (1996).

asumida bajo un "contrato asegurado" ("insured contract"). Además, a pesar que ambos contratos contienen "cláusulas de exclusión" con respecto a responsabilidad asumida en otros contratos, ambas pólizas especifican que proveerán **cubierta primaria** sobre la responsabilidad por daños asumida en un "contrato asegurado".[12] Ambas pólizas definen un "contrato asegurado" de la siguiente manera:

> That part of any contract or agreement entered into, as part of your business, by you or any of your employees pertaining to the rental or lease of any "auto".

De esta definición se desprende que el contrato de arrendamiento entre el ELA y Cabrera Hermanos es un "contrato asegurado" cubierto por ambas pólizas. Ninguna de las partes ha impugnado la validez de dicho contrato. En éste, el ELA se comprometió a indemnizar a Cabrera Hermanos por cualquier pérdida, costo, daño o riesgo de cualquier naturaleza que resultara del contrato de arrendamiento del vehículo de motor.

De esta forma, la responsabilidad asumida por el ELA en el "contrato asegurado" (contrato de arrendamiento) está cubierta de forma primaria bajo la póliza de Universal, hasta un límite de responsabilidad de $500,000.00. Ahora

---

[12] En lo pertinente, la "cláusula de exclusión" dispone:

> **Exclusion**
> This insurance does not apply to any of the following:
> 2. Contractual
> Liability assumed under any contract or agreement.
> But this exclusion does not apply to liability for damages:
> a. Assumed in a contract or agreement that is an "insured contract";

bien, en este caso el ELA es asegurado adicional de Antilles por medio de un endoso, el cual establece un límite de responsabilidad por daño físico de $50,000.00 y señala que **todos los otros términos de la póliza serán iguales a los establecidos a favor de Cabrera Hermanos.** Así, la póliza de Antilles provee cubierta primaria sobre la responsabilidad asumida por el ELA en el "contrato asegurado", por lo que responde por los daños causados, que no sean físicos, hasta su límite máximo de responsabilidad de $500,000.00. Por tanto, a base del inciso (b) de las cláusulas de "otro seguro", **ambas aseguradoras responden a nivel primario exclusivamente a nombre del ELA.**

No obstante, aquí no concluye nuestro análisis. El inciso (c) de la cláusula de "otro seguro" es una "cláusula a prorrata". Ésta establece que cuando dos aseguradoras cubran al mismo nivel de cubierta, ya sea primario o en exceso, la aseguradora contratante sólo responderá por la porción de la pérdida que corresponda al límite de responsabilidad establecido en su póliza, con relación al total de límites de responsabilidad aplicable a todos los seguros que cubren al mismo nivel. De esta manera y según dispone la "cláusula a prorrata", al ambas aseguradoras proveer cubiertas a nivel primario, la responsabilidad entre éstas será prorrateada.

Conforme a la transacción judicial adoptada en este caso, Antilles y Universal quedaron obligadas a pagar $555,750.00 a la parte demandante. Antilles consignó en el

tribunal $275,000.00 y Universal $277,875.00. Ambas pólizas tienen un límite de responsabilidad de 500,000.00, por lo que su responsabilidad prorrateada debe ser dividida en partes iguales; o sea, en $277,875.00 cada una. Según lo establecido en la transacción judicial, ninguna de las aseguradoras tiene derecho a ser reembolsada por lo pagado, ya que ninguna consignó una cantidad mayor a la que están obligadas a pagar según los términos de sus pólizas. Sin embargo, Antilles queda obligada a satisfacer los $2,875.00 que no consignó y que faltan para completar la cantidad que está obligada a pagar a la parte demandante.

Por otra parte, en el contrato de arrendamiento el ELA se comprometió a proporcionar una cubierta de seguro de responsabilidad primaria por daños físicos y de propiedad, instituyendo a Cabrera Hermanos como asegurado adicional. Dicho acuerdo no puede afectar la responsabilidad asumida contractualmente por Universal, por lo que no tendrá efecto sobre la relación interna entre las aseguradoras. 7A Couch on Insurance 3d, sec. 103:9 (1999). Véase además, Avilés v. Burgos, supra, 279, National Indemnity Co. v. Continental Ins. Co., supra, 1195.

IV

Aunque ya hemos determinado que Antilles y Universal comparten una responsabilidad primaria, es pertinente hacer unos señalamientos en cuanto a la solución recomendada por el Comisionado de Seguros al Tribunal de Primera Instancia y adoptada por éste.

Contrario a nuestra conclusión, el Comisionado de Seguros y el Tribunal de Primera Instancia determinaron que la responsabilidad de Antilles es primaria y la de Universal en exceso. El Comisionado de Seguros explicó que la responsabilidad primaria de Antilles surge de la "cláusula de exceso" de su póliza, la cual establece que la aseguradora del dueño del vehículo (Cabrera Hermanos) proveerá cubierta primaria. Explicó, además, que la responsabilidad en exceso de Universal surge de la "cláusula de exceso" de su contrato de seguro, la cual dispone que la aseguradora de quien no es el dueño del vehículo (ELA) proveerá cubierta en exceso. [13] De esa forma, el Comisionado de Seguros aplicó el inciso (a) de las cláusulas de "otro seguro" de ambas pólizas, sin tomar en consideración que se trata de un inciso inoperante, ya que el inciso (b) de dichas cláusulas específicamente dispone, según hemos explicado, que éste priva sobre aquél. [14]

---

[13] La "cláusula de exceso" incluida en cada una de las pólizas de Antilles y Universal dispone lo siguiente:

**Other Insurance**
(a) For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

[14] El inciso (a) y el inciso (b) de la cláusula de "otro seguro" de la póliza de Antilles establecen lo siguiente:

**Other Insurance**
(a) For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
**(b) Regardless of the provisions of paragraph a. above, this Coverage Forms Liability Coverage is**

El Comisionado de Seguros se negó a aplicar el inciso (b) porque entendió que reconocer la responsabilidad primaria de Universal a través del "contrato asegurado" implica permitir que Antilles se subrogue en los derechos que Cabrera Hermanos tiene contra el ELA a base de dicho contrato, subrogándose así contra su propio asegurado. Aunque reconocemos el peritaje del Comisionado de Seguros, no nos convence su opinión, ya que aplicar el inciso (b) de las cláusulas de "otro seguro" de ambas pólizas no conlleva la subrogación de Antilles en los derechos que Cabrera Hermanos pueda tener contra el ELA. [15] En primer lugar, ninguna de las partes ha impugnado la validez del "contrato asegurado" (contrato de arrendamiento). En segundo lugar, según hemos explicado en la parte anterior de esta opinión, la responsabilidad primaria de Antilles surge **exclusivamente** de su responsabilidad **como aseguradora del ELA**, ya que la responsabilidad que establece el inciso (b) de la cláusula de "otro seguro" de su póliza priva sobre la responsabilidad que establece el inciso (a) o "cláusula de

---

**primary for any liability assumed under an "insured contract".**

[15] Reiteradamente hemos establecido que los tribunales pueden revisar las conclusiones de derecho de una agencia administrativa en todos sus aspectos y que no deben otorgarle deferencia a una conclusión de derecho administrativa que sea **irrazonable**. La norma de deferencia judicial no es "un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia". Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 416, 436 (1997). Véase además, Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 688-689 (2000), Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999).

exceso" de la misma.[16] Por tanto, al pagar tan solo la mitad de la compensación debida a los demandantes **Antilles no se subroga en los derechos de Cabrera Hermanos, pues no está respondiendo a nombre de dicho asegurado.** No estamos, pues, ante un supuesto de subrogación que nos impida reconocer la responsabilidad primaria de Universal.

V

Finalmente, Universal señala que erró el tribunal apelativo al no imponerle a Antilles el pago de intereses y honorarios de abogado por temeridad. No tiene razón. En primer lugar, la imposición de intereses y honorarios de abogado por temeridad es una facultad discrecional del tribunal, que no será variada a menos que la misma constituya un abuso de discreción. Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 349-350 (1989). Véase además, Miranda v. E.L.A., 137 D.P.R. 700, 719 (1994). Además, en la transacción judicial las partes acordaron que la sentencia se dictaría sin especial condena de costas e intereses y que los honorarios de los abogados serían pagados por sus representados. Por tal razón, no procede

---

[16] La "cláusula de exceso" y el inciso (b) de la cláusula de "otro seguro" de la póliza de Antilles establecen lo siguiente:

> **Other Insurance**
> (a) For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
> **(b) Regardless of the provisions of paragraph a. above, this Coverage Forms Liability Coverage is primary for any liability assumed under an "insured contract".**

imponerle a Antilles el pago de intereses y honorarios de abogado por temeridad.

Por todo lo anterior, se confirma la sentencia del foro apelativo que dispuso que ambas aseguradoras comparten la responsabilidad primaria de pagarle $555.750.00 a la parte demandante.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda Monteagudo Pérez, *et al*
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.                                    CC-2000-799

Antilles Insurance Company
Demandada-recurrida

Edwin Ferrer Montalvo, et al
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.

Antilles Insurance Company
Demandada-recurrida

Ramonita Rivera Cintrón, *et al*
Demandante

v.

Estado Libre Asociado de P.R.
Universal Insurance Company
Demandada-peticionaria

v.

Antilles Insurance Company
Demandada-recurrida

---

*SENTENCIA*

En San Juan, Puerto Rico, a 16 de agosto de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la

presente Sentencia, se confirma la sentencia del foro apelativo que dispuso que ambas aseguradoras comparten la responsabilidad primaria de pagarle $555.750.00 a la parte demandante.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Presidente señor Hernández Denton disiente con las siguientes expresiones: "El Juez Presidente señor Hernández Denton disiente de la Opinión del Tribunal por entender que de una lectura de las pólizas de seguro suscritas en este caso se desprende que la responsabilidad de Antilles Insurance Company es primaria y la de Universal Insurance Company en exceso. Por ende, revocaríamos la decisión del Tribunal de Apelaciones y dejaríamos en vigor la sentencia del Tribunal de Primera Instancia que estuvo fundamentada en la opinión experta de la Oficina del Comisionado de Seguros". La Jueza Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo