CARMEN MILAGROS IGARAVIDEZ LÓPEZ, **demandante y peticio-naria,** *v.* LESTER IVÁN RICCI ASENCIO, **demandado y recurrido.**

*Número:* CC-97-610          *Resuelto:* 4 de noviembre de 1998

1

*Olga García Vincenty,* de *Vicente & Cuebas,* abogada de la peticionaria; *Frances Caraballo Pietri,* abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La controversia que hoy tenemos ante nuestra consideración es la siguiente: ¿cuál es el mecanismo para hacer valer una estipulación referente a la liquidación de bienes suscrita por una persona en un divorcio por consentimiento mutuo? Por entender que dicho mecanismo es el de ejecución de sentencia y no una acción independiente, revocamos la determinación del Tribunal de Circuito de Apelaciones.

I

En 1994 la señora Igaravidez López y el señor Ricci Asencio se divorciaron por la causal de consentimiento mutuo. Estipularon, entre otras cosas, que un bien que poseían sería vendido y, una vez cubierta la hipoteca que recaía sobre dicho inmueble, el sobrante le correspondería a la señora Igaravidez López.

Posteriormente, la señora Igaravidez López alegó que, a pesar de que el inmueble había sido vendido, el señor Ricci había incumplido con lo estipulado, ya que no le había pagado la totalidad del sobrante de la venta del inmueble. Por tal razón, luego de varios incidentes procesales solicitó, dentro del pleito original de divorcio, la ejecución de la sentencia.

Así las cosas, el Tribunal de Primera Instancia procedió a dictar una orden para embargar los bienes del señor Ricci. Por su parte, el señor Ricci solicitó que se dejara sin efecto la orden de embargo trabada, ya que alegadamente tenía varias defensas y consignó en el tribunal lo que adeudaba, hasta tanto se resolviera la controversia.

El tribunal de instancia celebró una vista y resolvió que no procedía la ejecución de la sentencia dentro del pleito de divorcio que se llevó a cabo ante la sala de relaciones de familia por tratarse de una controversia de "interés privado de las partes". Entendió el foro a quo que la controversia no podía ser objeto de una disposición final dentro del pleito original ni ante la consideración de la sala de relaciones de familia. Por tal razón, dejó sin efecto la orden de embargo y ordenó la devolución del dinero que el señor Ricci había consignado en el tribunal.

Inconforme, la señora Igaravidez recurrió al Tribunal de Circuito de Apelaciones, el cual denegó el recurso de *certiorari* presentado por entender que el Tribunal de Primera Instancia actuó correctamente al dejar sin efecto la orden de embargo que había emitido, y ordenar que la reclamación se tramitara por la vía ordinaria ante la sala civil correspondiente.

No conforme con la determinación del Tribunal de Circuito de Apelaciones, la señora Igaravidez recurre ante nos. Con el beneficio de las posiciones de ambas partes, procedemos a resolver la controversia.

## II

■ En 1978 este Tribunal en *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978), reconoció el consentimiento mutuo de los cónyuges como causa legítima para el divorcio. Allí esbozamos unas normas generales para la tramitación de la acción de divorcio por consentimiento mutuo. En ese sentido señalamos que la acción habría de tramitarse mediante una petición conjunta, la que debía venir acompañada de estipulaciones referentes a la división de bienes, al sustento de las partes y a otras consecuencias del divorcio. *Figueroa Ferrer*, págs. 276–277.

■ En cuanto a la naturaleza de las estipulaciones contenidas en una petición de divorcio por la causal de consentimiento mutuo, hemos señalado que constituyen un contrato de transacción que obliga a las partes. *Magee v. Alberro*, 126 D.P.R. 228 (1990); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987). Como norma general, el juez aceptará los convenios y las estipulaciones a las cuales las partes lleguen para finalizar un pleito, y este acuerdo tendrá efecto de cosa juzgada. *Negrón Rivera y Bonilla, Ex Parte*, supra; *Canino v. Bellaflores*, 78 D.P.R. 778 (1955).

## III

Respecto al contrato de transacción, resulta pertinente señalar que el Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821, lo define de la forma siguiente:

> *La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.*

Recientemente este Tribunal, en *Neca Mortg. v. A & W Dev. S.E.*, 137 D.P.R. 860 (1995), tuvo la oportunidad de discutir *in extenso* la figura del contrato de transacción. Allí señalamos que existen dos (2) tipos de contratos de transacción: el judicial y el extrajudicial.

Estamos ante un contrato de transacción extrajudicial si, antes de comenzar un pleito, las partes interesan eliminar la controversia mediante un acuerdo, o aun estando pendiente el pleito, las partes acuerdan una transacción sin la intervención del tribunal. Por el contrario, si la controversia degenera en un pleito y, luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, estamos ante un contrato de transacción judicial, el cual tiene el efecto de terminar el pleito.

El Art. 1715 del Código Civil, 31 L.P.R.A. sec. 4827, recoge el principio de que la transacción tiene, para las partes, el efecto de cosa juzgada. Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver de nuevo sobre éstos. *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503 (1988).

La transacción, como todo contrato, no garantiza que los contratantes cumplan con sus respectivas prestaciones. Por lo tanto, puede precisarse la intervención judicial para procurar que la transacción rinda su finalidad esencial de dirimir divergencias en la forma convenida. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, 1985, T. IV, pág. 816. Así pues, cuando se trata de una transacción judicial si una de las partes incumple con lo estipulado, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. *Neca Mortg. v. A & W Dev. S.E.*, supra.[1]

---

[1] Por el contrario, la transacción extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. *Neca Mortg. v. A & W Dev. S.E.*, 137 D.P.R. 860 (1995).

## IV

■ La Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece todo lo relativo al procedimiento de apremio o de ejecución de una sentencia. La regla general es que todas las sentencias se ejecutan en el tribunal de origen; es decir, en el tribunal que dictó la sentencia que se pretende ejecutar. La parte a cuyo favor se dicte la sentencia podrá ejecutarla mediante el procedimiento fijado en la citada Regla 51, en cualquier momento dentro de los cinco (5) años de ésta ser firme. Expirado dicho término, podrá ejecutarse la sentencia mediante la autorización del tribunal a una moción de parte y previa notificación a todas las partes. *Figueroa v. Banco de San Juan*, 108 D.P.R. 680 (1979); *Avilés Vega v. Torres*, 97 D.P.R. 144 (1969).

## V

■ De lo esbozado anteriormente se desprende que las estipulaciones en un caso de divorcio por consentimiento mutuo constituyen un contrato de *transacción judicial*. Esto es así porque ponen fin a una acción e incorporan unos acuerdos al proceso judicial en curso. Por lo tanto, cuando una de las partes incumple —como en este caso— con una estipulación relativa a la liquidación de bienes, el mecanismo que nuestro ordenamiento jurídico dispone para que lo convenido se lleve a efecto es el procedimiento de ejecución de sentencia.[2] No es necesario instar

---

[2] Aprovechamos para señalar que la imposición del requisito de estipular lo relativo a la división de bienes tiene el propósito de que una vez se haya decretado el divorcio las partes no tengan que enfrentarse de nuevo a dilucidar aspectos de la liquidación del régimen económico que puedan traer hostilidades y desavenencias entre ellos. Todos los componentes del proceso —jueces, abogados y peticionarios— deben cerciorarse de que antes de redactar las estipulaciones, han pasado por un proceso deliberativo que les haya permitido meditar sobre las consecuencias económicas que el divorcio tendrá para cada uno. A veces, la prisa por obtener el divorcio hace que se lleguen a acuerdos que las partes no pueden cumplir, recargando a los tribunales con incidentes relacionados con el incumplimiento de las estipulaciones.

una acción independiente. Ya en otra ocasión, al señalar que el procedimiento de desacato civil no procede para hacer valer la obligación en la que incurrió una persona mediante las estipulaciones que formaron parte de la petición de divorcio por consentimiento mutuo, indicamos que el ex cónyuge que reclama el cumplimiento de la estipulación "no queda huérfano de remedios. El mismo tiene a su alcance los métodos ordinarios de *ejecución de sentencia*". (Énfasis suplido.) *Pabón Rodríguez y Díaz López, Ex parte*, 132 D.P.R. 898, 902 (1993).

Una de las contenciones principales del recurrido señor Ricci es que el divorcio por consentimiento mutuo se dictó por una Sala de Relaciones de Familia del Tribunal de Primera Instancia, por lo que procedía que otra sala civil y no la Sala de Relaciones de Familia dilucidara lo relativo al alegado incumplimiento de una estipulación. Esto por ser dicha controversia de naturaleza privada entre las partes. No le asiste la razón.

El Art. 5.003 de la Ley de la Judicatura de Puerto Rico, 4 L.P.R.A. sec. 22o, dispone que el Tribunal de Primera Instancia conocerá de todo asunto civil, con independencia de la materia y la cuantía que se reclame en la acción. Sin embargo, para facilitar el manejo de casos en los tribunales, administrativamente se han ido creando salas especializadas en asuntos relacionados con la familia.[3] Así, por ejemplo, en estas salas se dilucidan, entre otros asuntos, controversias relativas a custodia, patria potestad y divorcios.

No obstante dicha estructura, establecida para una sana administración judicial y organización administrativa, no puede ser contraria a las reglas sobre la competencia del Tribunal de Primera Instancia, ni con la norma constitucional que dispone que los tribunales en Puerto

---

[3] Debe entenderse que el término "salas" se refiere a salones de sesiones especializados en asuntos específicos, no a "salas" en el contexto de la Ley de la Judicatura de Puerto Rico de 1994.

Rico constituyen un sistema judicial unificado en lo concerniente a la jurisdicción. Tampoco puede estar reñido con el principio de que todo procedimiento ha de resolverse de forma justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Entendemos que, en aras de economía procesal, y para evitar que un caso entre las mismas partes y sobre el mismo incidente pueda estar fragmentado en distintas salas del Tribunal de Primera Instancia, es dentro del pleito original de divorcio por consentimiento mutuo que debe dilucidarse el procedimiento de ejecución de sentencia cuando una parte incumple con lo estipulado en la petición de divorcio referente a la liquidación de bienes.

La conclusión a la que llegamos hoy es cónsona con el principio general de que es al tribunal que dictó la sentencia al que le corresponde autorizar su ejecución en los casos correspondientes. Además, es compatible con los pronunciamientos que ha hecho este Tribunal en cuanto a que los incidentes que surjan con posterioridad a una sentencia de divorcio deben dilucidarse dentro de ese mismo pleito. Véase *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 (1985).

## VI

En este caso, erró el Tribunal de Circuito de Apelaciones al confirmar la resolución dictada por el Tribunal de Primera Instancia, en virtud de la cual determinó que no procedía dilucidar en un procedimiento de ejecución de sentencia (dentro del pleito original de divorcio) lo relativo al alegado incumplimiento con una estipulación referente a la liquidación de bienes.

Como señalamos anteriormente, el mecanismo que nuestro ordenamiento reconoce para hacer cumplir una estipulación contenida en una petición de divorcio por consentimiento mutuo, lo cual constituye una transacción ju-

dicial, es el de ejecución de la sentencia. *Procede en el caso de marras que la señora Ricci solicite la ejecución de la sentencia dentro del pleito original de divorcio.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, la sentencia de divorcio, mediante la cual se decretó la disolución del matrimonio entre la peticionaria y el recurrido, contenía un párrafo en virtud del cual el foro de instancia ordenó la liquidación de los bienes gananciales conforme al acuerdo sobre el particular convenido por las partes. El último párrafo de dicha sentencia dispone lo siguiente:

> *El Tribunal aprueba la estipulación suscrita por las partes, la incorpora y hace formar parte de esta sentencia, y apercibe a los peticionarios de su fiel cumplimiento.* (Énfasis suplido.)

A la luz de lo dispuesto en este párrafo, no puede haber duda alguna de que el recurrido y la peticionaria estaban obligados a efectuar la referida liquidación de los bienes gananciales *por mandato judicial.* Dicha liquidación fue expresamente ordenada mediante la sentencia aludida; pues formaba parte del dictamen del foro de instancia en el pleito del divorcio.

En vista de lo anterior, al haber incumplido el recurrido con lo decretado en la sentencia con respecto a la liquidación de los bienes gananciales, procedía que se efectuara la *ejecución* de dicha sentencia conforme lo dispone la Regla

51 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III.

La citada Regla 51 no dispone expresamente que la ejecución de una sentencia se tramitará en el mismo foro que la dictó, como parte del mismo pleito en el cual dicha sentencia fue emitida. Pero es evidente que ello es así. Los procedimientos de *ejecución* de sentencia, por su propia naturaleza, son procedimientos *suplementarios*. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7mo Cir.1993). Constituyen una prolongación o un apéndice del proceso que dio lugar a una sentencia, que en ocasiones deben realizarse para darle cumplimiento o eficacia a dicha sentencia. En un pleito son las actividades procesales ulteriores que se llevan a cabo luego del pronunciamiento judicial medular, para acomodar la realidad exterior al mandato del tribunal. L. Pieto-Castro y Ferrandiz, *Derecho Procesal Civil*, 2da ed., Madrid, Ed. Tecnos, 1974, pág. 157. Tratándose, pues, de un procedimiento suplementario, la ejecución tiene que llevarse a cabo en el mismo foro que dictó la sentencia que se interesa ejecutar, como parte del mismo pleito en el cual tal sentencia fue emitida. Por ello, con razón, afirma Cuevas Segarra, que "la sentencia se ejecuta en el tribunal sentenciador". J.A. Cuevas Segarra, *Práctica procesal penal puertorriqueña: procedimiento civil*, San Juan, Pubs. J.T.S., 1986, Vol. II., pág. 277.

Por estas sencillas, pero elementales razones, concurro con la mayoría del Tribunal en cuanto a que, en este caso, el foro apelativo erró al confirmar la resolución del foro de instancia en virtud de la cual éste determinó que no procedía la ejecución de la sentencia dentro del pleito del divorcio.