ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| HAMILTON MONTALVO PÉREZ<br><br>Apelante<br><br><br>v.<br><br><br>MICHELLE RIVERA PÉREZ<br><br>Apelada | KLAN202500081 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: VB2024CV00271<br><br><br>Sobre: División de Comunidad Post Ganancial |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2025.

Comparece la parte demandante y apelante, Sr. Hamilton Montalvo Pérez (señor Montalvo Pérez), y nos solicita que revoquemos la *Sentencia* emitida el 27 de diciembre de 2024, notificada el 2 de enero de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón (TPI). En el aludido pronunciamiento judicial, el TPI declaró Ha Lugar la *Moción para Desestimar*, incoada por la parte demandada y apelada, Sra. Michelle Rivera Pérez (señora Rivera Pérez). En consecuencia, desestimó la reclamación del compareciente, al acogerla como una moción de relevo de sentencia tardía.

**I.**

La presente causa se inició el 17 de abril de 2024, ocasión en que el señor Montalvo Pérez presentó una *Demanda* en contra de la señora Rivera Pérez.[1] Alegó que, el 6 de abril de 2018, la pareja se divorció por mutuo consentimiento.[2] No obstante, el señor Montalvo

---

[1] Apéndice, págs. 8-11.
[2] Véase, Apéndice, págs. 18-23. Los litigantes contrajeron matrimonio el 2 de mayo de 2000.

Número Identificador

SEN2025_____

Pérez afirmó que continuaron conviviendo hasta enero de 2023. Aseguró que, durante ese periodo, bajo la creencia de una reconciliación, pagó la pensión alimentaria de las dos hijas procreadas durante la vigencia del matrimonio e invirtió dinero privativo y esfuerzo.

En lo que nos atañe, el demandante indicó que la *Sentencia* de divorcio acogió los acuerdos pactados en cuanto a los bienes muebles, inmuebles y las deudas gananciales.[3] En particular, el demandante aludió a una propiedad en la Urbanización Brisas de Monte Sol, en Yauco, en que las partes se obligaron a otorgar una escritura de donación, a favor de las dos hijas en común.[4] Empero, alegó que no contó con representación legal ni fue debidamente orientado. Adujo que, por causa del "proceso atropellado" de la firma de un juramento[5] y sin la asesoría adecuada, quedó en una posición económica desventajada. Luego de asesorarse con posterioridad en torno a la división de la comunidad postganancial, el demandante sostuvo que no era justo donar el inmueble a sus hijas y solicitó la adjudicación de la propiedad a su favor.

El 23 de julio de 2024, la señora Rivera Pérez instó *Moción para Desestimar*.[6] En síntesis, expuso que la reclamación en realidad se trataba de una moción de relevo parcial de sentencia, que el demandante pretendía utilizar en sustitución de los recursos de reconsideración y revisión. Acotó que la petición fue incoada fuera del término de seis (6) meses, según proveen las normas procesales civiles.

La demandada apostilló que no existía una comunidad de bienes postganancial, toda vez que el caudal fue distribuido en el

---

[3] Apéndice, pág. 23, inciso (c).
[4] Apéndice, pág. 20, inciso IV. *Bienes Inmuebles* (b).
[5] Apéndice, pág. 22. El testimonio 7,271 fue suscrito por ambas partes ante el notario Carlos Ruiz González.
[6] Apéndice, págs. 12-17. El apelante omitió la primera página de la *Sentencia* de divorcio, de la que tomamos conocimiento judicial en el expediente electrónico.

divorcio. Añadió que el foro sentenciador, en el caso de divorcio por consentimiento mutuo, se cercioró de que las partes recibieron la orientación legal adecuada para suscribir de forma voluntaria e informada las estipulaciones contenidas en la petición. Por ello, los acuerdos allegados se hicieron parte del dictamen. Apuntó que las estipulaciones tienen el efecto de cosa juzgada.

A su vez, rechazó la alegación de desventaja argüida por el demandante. Indicó que éste no sólo aceptó el pago de $10,000 por el inmueble sujeto a hipoteca atribuido a la señora Rivera Pérez,[7] sino que retuvo su plan de retiro 401k, el plan de ahorro de su trabajo y uno de los vehículos de motor que la expareja poseía en común.[8] Por consiguiente, al tratarse meramente de un "cambio de parecer" que no implicaba un perjuicio grave, solicitó la desestimación de la causa.

El 19 de agosto de 2024, el señor Montalvo Pérez presentó *Moción en Oposición a Desestimación*.[9] Aun cuando reconoció que, en nuestro ordenamiento, a las estipulaciones se le atribuye el carácter de un contrato de transacción, planteó que en ocasiones dichos acuerdos pueden estar motivados por cargas emocionales o la ventaja económica o intelectual que alguno de los cónyuges tenga sobre el otro. Manifestó que no pretendía ser relevado de la *Sentencia* de divorcio, sino de la causa de acción relacionada con la liquidación de los bienes gananciales, toda vez que fue inducido por la demandada a suscribir las estipulaciones, que incluyen la donación involuntaria de la propiedad de Yauco.

El señor Montalvo Pérez explicó que, sin su intervención, la señora Rivera Pérez contrató los servicios del Lcdo. Luciano Sánchez González (licenciado Sánchez González) para la redacción de las

---

[7] Una segunda propiedad sita en Vega Baja fue adjudicada a favor de la señora Rivera Pérez por un pago de $10,000. Refiérase a la pág. 19, inciso IV. *Bienes Inmuebles* (a).

[8] Refiérase a la pág. 20, inciso IV, *Bienes Muebles* (1).

[9] Apéndice, págs. 24-35.

estipulaciones y los trámites del divorcio. Dijo que fue citado por éste y, sin estar asistido por representación legal alguna, "se le informó lo que tenía que aceptar y lo que no tenía que aceptar por 'ser la mejor opción para ambas partes' ". Apostilló, entonces, que suscribió las estipulaciones, sin la deliberación y el consentimiento informado que debe preceder a este tipo de acuerdo. Dijo que no advirtió que la decisión perjudicaba su derecho de propiedad sobre el inmueble. Añadió también que el licenciado Sánchez González representó a la demandada en la vista de divorcio, aunque "en alguna medida estuvo representando a ambos cónyuges". A esos efectos, cuestionó la dimensión ética y enunció que se vio obligado a comparecer al divorcio por derecho propio, en una situación de indefensión.

Justipreciadas las posturas, el 2 de enero de 2025, el TPI notificó la *Sentencia* apelada.[10] Allí determinó probado lo siguiente:

> 1. Las partes en el presente caso estuvieron casados hasta el de 6 de abril de 2018 donde se dictó *Sentencia* y se llevó a cabo la división y adjudicación de la Sociedad Legal de Gananciales compuesta por las partes.

> 2. El 17 de abril de 2024 radicó demanda en el presente caso donde como único planteamiento de que se releve la sentencia es que el demandante compareció por derecho propio y se comprometió a donar a sus hijas un bien inmueble en el pueblo de Yauco. Se alega que luego de buscar asesoramiento en el 2023 (5 años después de dictada y distribuido los bienes) el caballero no está conforme con la donación a sus hijas. No surge prueba de ninguna índole que el caballero fuera inducido a error, que se cometiera fraude o que la sentencia sea nula.

En observancia a la Regla 49.2 de Procedimiento Civil, *infra*, que versa sobre el relevo de sentencia, el TPI concluyó que la reclamación era tardía al exceder los seis (6) meses establecidos en la norma procesal. Expresó, además, que las estipulaciones del dictamen de divorcio habían sido satisfechas en su totalidad, salvo

---

[10] Apéndice, págs. 1-7.

la otorgación de la escritura de donación a las dos hijas de los litigantes. Resaltó que el demandante no demostró con prueba robusta y convincente algún fraude al tribunal, error o nulidad para ejercer discreción y dejar sin efecto los acuerdos llegados en la *Sentencia* de divorcio por consentimiento mutuo. Por ende, declaró Ha Lugar la petición de la demandada y desestimó la reclamación civil del epígrafe, sin especial imposición de costas, ni honorarios de abogado.

En desacuerdo, el 3 de febrero de 2025, el señor Montalvo Pérez acudió mediante un *Recurso de Apelación* ante nos y esbozó los siguientes señalamientos de error:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA A FAVOR DE LA APELADA SIN TOMAR EN CONSIDERACIÓN LA NATURALEZA DE VOLUNTARIEDAD QUE SE REQUIERE EN LA FIGURA DE LA DONACIÓN Y LA FALTA DE CUMPLIMIENTO DE SUS REQUISITOS.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA A FAVOR DE LA APELADA AL NO PERMITIRLE AL APELANTE SU DÍA EN CORTE PARA PROBAR LOS VICIOS EN EL CONSENTIMIENTO.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA A FAVOR DE LA APELADA SIN TOMAR EN CONSIDERACIÓN LA SOLICITUD DE DESCALIFICACIÓN DEL ABOGADO QUE COMPARECIÓ EN REPRESENTACIÓN DE LA APELADA, SIENDO ÉSTE EL MISMO QUIEN LA REPRESENTÓ EN EL PROCESO DE DIVORCIO.

D. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA A FAVOR DE LA APELADA AL CONSIDERAR QUE SE TRATA DE UNA MOCIÓN DE RELEVO DE SENTENCIA PRESENTADA FUERA DE TÉRMINO, Y NO DE UN CASO NUEVO DE LIQUIDACIÓN DE UN BIEN QUE, HABIENDO SIDO OBJETO DE UNA SENTENCIA, ESTA ÚLTIMA NO SE EJECUTÓ.

La señora Rivera Pérez presentó su *Alegato* el 4 de marzo de 2024. Con el beneficio de ambas posturas, resolvemos.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) dejar de exponer una reclamación que justifique la concesión de un remedio y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros,* 2024 TSPR 13, 213 DPR ___ (2024); *González Méndez v. Acción Soc.*, 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros, supra*, las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2, *supra.* Estas normas son las siguientes:

(1) La desestimación procede cuando de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotara la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.5, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efron Dorado et al,* 211 DPR 70, 84 (2023).

**B.**

En nuestro ordenamiento jurídico, es norma asentada que toda sentencia dictada por un tribunal de justicia goza de una presunción de validez y corrección. *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294 (1989); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445 (1977); *Cortés Piñeiro v. Sucn. A. Cortés*, 83 DPR 685, 690 (1961). Empero, existen circunstancias particulares en las que "nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra". *López García v. López García*, 200 DPR 50, 59 (2018). Estas circunstancias son las que abarca la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2.

La Regla 49.2 de Procedimiento Civil, *supra*, autoriza al tribunal a relevar a una parte de una sentencia, orden o procedimiento por varios fundamentos; a saber: (a) error, inadvertencia, sorpresa o negligencia excusable; (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo ser descubierta a tiempo para solicitar un nuevo juicio; (c) fraude, intrínseco o extrínseco, falsa representación u otra conducta impropia de una parte adversa; (d) nulidad de la sentencia; (e) la sentencia ha sido satisfecha o renunciada; y (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Conforme lo anterior, la Regla 49.2, *supra*, constituye "el mecanismo que tiene disponible una parte que interese solicitar al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos". *López García v. López García, supra*, pág. 60; *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010). Ahora, la Regla 49.2 de Procedimiento Civil, *supra*, consigna que no será aplicable a las sentencias dictadas en pleitos de divorcio, a menos que la moción

se funde en los incisos (c) o (d) antes mencionados. Aunque una moción bajo esta norma procesal no afecta la finalidad de una sentencia ni suspende sus efectos, el tribunal podrá: (1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento; (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y (3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

Igualmente, dispone la Regla 49.2 de Procedimiento Civil, *supra,* que la moción se debe presentar dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Claro está, como se conoce, si el fundamento para solicitar el relevo de la sentencia se basa en su nulidad, el término de los seis (6) meses es inaplicable y el tribunal vendrá obligado a relevarla. *HRS Erase v. CMT*, 205 DPR 689, 699 (2020); *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 922 (2000); *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 244 (1996). Ello es así debido a que cuando una moción al amparo de la Regla 49.2 de Procedimiento Civil, *supra,* se basa en la nulidad de una sentencia y dicha nulidad queda probada, el tribunal queda sin discreción para rechazar la solicitud de relevo y viene obligado a acatarla. *HRS Erase v. CMT, supra*, pág. 698; *López García v. López García, supra*, pág. 61; *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

En el examen sobre la procedencia o no de una moción de relevo, el tribunal no dilucida los derechos de las partes ni las controversias jurídicas de la demanda, solamente debe resolver si la parte promovente satisface o no los requisitos estatuidos. El Tribunal Supremo ha opinado que se debe examinar si el peticionario tiene una defensa legítima en sus méritos; el tiempo que media entre la sentencia y la solicitud del relevo; y el grado de perjuicio que pueda ocasionar a la otra parte la concesión de la

petición de relevo de sentencia. *Reyes v. ELA et al.*, 155 DPR 799, 809-810 (2001) y los casos allí citados. Ahora, si bien la Regla 49.2 de Procedimiento Civil, *supra*, se interpreta liberalmente, el alto foro ha advertido que ésta no constituye una "llave maestra" para reabrir controversias ni es sustituta de un recurso de revisión o una moción de reconsideración. *Vázquez v. López*, 160 DPR 714, 726 (2003).

## C.

El divorcio por consentimiento mutuo se tramita mediante una petición conjunta acompañada por las estipulaciones correspondientes a la división de los bienes, el sustento de las partes y otras consecuencias del divorcio, tales como los alimentos de los hijos menores. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 720 (2022); *Igaravidez v. Ricci*, 147 DPR 1 (1998); *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61, 72 (1987); *Figueroa Ferrer v. E.L.A.*, 107 DPR 250, 277 (1978). Las estipulaciones finalmente suscritas por las partes y aceptadas por el tribunal constituyen un contrato de transacción judicial que obliga a los excónyuges, pues pone fin a una acción e incorpora unos acuerdos al proceso judicial en curso. *Díaz Rodríguez v. García Neris*, *supra*; *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 204 (2006); *Igaravidez v. Ricci, supra*, pág. 7; *Magee v. Alberro*, 126 DPR 228, 232 (1990); *Negrón Rivera y Bonilla, Ex parte, supra*, pág. 74.

El Artículo 1709 del Código Civil de 1930, 31 LPRA ant. sec. 4821 —hoy derogado pero vigente a los hechos de autos— definía el *contrato de transacción* como un acuerdo mediante el cual "las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado".[11] Mediante este contrato consensual, recíproco y

---

[11] En consideración a que la obligación objeto de controversia se perfeccionó bajo la vigencia del Código Civil de 1930, aplicaremos dicho cuerpo normativo y su jurisprudencia interpretativa al asunto planteado. Ello así, en armonía con el Artículo 1812 del Código Civil de 2020, *Actos y contratos celebrados bajo legislación anterior*, 31 LPRA sec. 11717, que dispone: "Los actos y contratos

oneroso, las partes finiquitan una controversia con el propósito de evitar los pesares que conllevaría un litigio. *US Fire Insurance v. A.E.E.*, 174 DPR 846, 853 (2008).

En fin, el propósito de estipular lo relativo a la división de bienes es que "una vez decretado el divorcio, las partes no tengan que enfrentarse de nuevo a dilucidar aspectos de la liquidación del régimen económico que puedan traer hostilidades y desavenencias entre" las partes. *Díaz Rodríguez v. García Neris, supra*, pág. 721. Como regla general, el Tribunal aceptará los convenios y las estipulaciones a las que lleguen las partes para finalizar el pleito. El acuerdo tendrá el efecto de cosa juzgada entre las partes. *Díaz Rodríguez v. García Neris, supra*; *Igaravidez v. Ricci, supra*; *Magee v. Alberro, supra*.

Sin embargo, "la autonomía de la voluntad de los contratantes no es irrestricta, pues '[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". *Díaz Rodríguez v. García Neris, supra*; *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1002 (2010), que cita el derogado Art. 1207 del Código Civil de 1930, 31 LPRA ant. sec. 3372. En vista de ello, el tribunal no está obligado a aprobar la estipulación que se le someta en un divorcio por consentimiento mutuo, pues debe cerciorarse de que no es producto de la irreflexión o de la coacción. *Díaz Rodríguez v. García Neris, supra*; *McConnell v. Palau*, 161 DPR 734, 747 (2004); *Negrón Rivera y Bonilla, Ex parte, supra*, pág. 72; *Figueroa Ferrer v. E.L.A., supra*, pág. 276. Por lo tanto, la naturaleza que tienen las estipulaciones en los divorcios por consentimiento mutuo, de

---

celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". Ahora bien, el Artículo 1497 del Código Civil de 2020, 31 LPRA sec. 10641, define el acuerdo transaccional de manera similar: "Por el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica".

constituir cosa juzgada, debe ser analizada a la luz de la indeclinable obligación de los tribunales de velar por que dichos acuerdos confieran la debida protección a ambas partes. *Náter v. Ramos,* 162 DPR 616, 628 (2004). Para ello, los tribunales siempre deben cerciorarse de que los acuerdos suscritos por las partes sean consecuencia de un proceso deliberativo en el que medie el conocimiento de las consecuencias de éstos, especialmente cuando sólo una de las partes comparece con representación legal. *Id.*

Aceptado el acuerdo, el juzgador puede interpretar su extensión y aplicación al pleito judicial. *Rivera Rodríguez v. Rivera Reyes, supra*, pág. 205, *Igaravidez v. Rici, supra.* Para ello, aplican las reglas generales sobre la interpretación de contratos, en lo que no sean incompatibles con las normas que regulan los contratos de transacción. *Negrón Rivera y Bonilla, Ex parte*, *supra*, pág. 74. Así, el Art. 1233 del Código Civil de 1930, 31 LPRA ant. sec. 3471, establecía que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

**III.**

En la causa presente, el apelante alega, *inter alia,* que el TPI incidió al no considerar la voluntariedad en la figura de donación y privarle de su día en corte para probar los presuntos vicios del consentimiento. Además, aduce que el TPI se equivocó al omitir la solicitud de descalificación del licenciado Sánchez González que representó a la apelada en el divorcio y en este pleito. Por último, imputa error al TPI al considerar la reclamación como una moción de relevo de sentencia, en lugar de un caso de liquidación de un bien postgananancial.

Por la relación intrínseca de los señalamientos de error, los discutiremos en conjunto.

Como cuestión de umbral, luego de una revisión de los autos y de las entradas del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos, hemos constatado que el apelante no interpuso una solicitud de descalificación contra el licenciado Sánchez González. Si bien entre sus alegaciones realizó imputaciones éticas al abogado de la apelada,[12] en realidad, nunca estuvo ante la consideración del TPI una petición de esa naturaleza.

En cuanto a las contenciones contra la representación legal de la señora Rivera Pérez, lo cierto es que de la juramentación conjunta se desprende que el notario autorizante del testimonio fue Carlos Ruiz González, no el licenciado Sánchez González. Éste último, además, consta en la *Sentencia* de divorcio como el abogado de la apelada, ya que del dictamen surge palmariamente que el apelante compareció por derecho propio. Es decir, contrario a lo argüido, el licenciado Sánchez González no representó a ambos excónyuges, lo cual está vedado por las *Guías para uniformar el procedimiento de divorcio por consentimiento mutuo* de mayo de 1988.

Con relación a la voluntariedad de las estipulaciones, entre éstas la donación de la casa de Yauco a las hijas en común, la aludida *Sentencia* de divorcio consigna que los acuerdos allegados se hicieron formar parte del dictamen. Previamente, el Hon. Juan Carlos Negrón Rodríguez hizo mención del examen bajo juramento realizado en su día a ambos contendientes para corroborar la ausencia de irreflexión y coacción.

---

[12] El apelante recrea alegaciones muy similares a las expuestas en el caso *Náter v. Ramos,* 162 DPR 616 (2004), como por ejemplo que supuestamente "se le informó lo que tenía que aceptar y lo que no tenía que aceptar". No obstante, en la citada jurisprudencia, luego de poco más de dos meses de decretado el divorcio, la señora Dulce María Náter Cardona interpuso —en el mismo caso de divorcio— una oportuna moción de relevo de sentencia. Más allá del adecuado trámite procesal, el Tribunal Supremo resolvió a favor de la peticionaria al considerar su poca escolaridad al suscribir las estipulaciones y el hecho irrefutable de que el terreno donde se construyó el hogar conyugal era propiedad del padre de ella y los acuerdos estipulados nada dispusieron al respecto. Estas circunstancias se distinguen sustancialmente del caso de marras.

Recuérdese que las estipulaciones que forman parte del dictamen se conciben como un pacto de transacción judicial que obliga a los contratantes a su cumplimiento. Una vez los acuerdos fueron incorporados a la *Sentencia* de divorcio, al presente, tienen el efecto de cosa juzgada. Nótese también que la estipulación impugnada no es perjudicial. Ambos excónyuges renuncian por igual a sus respectivas participaciones sobre el inmueble en bienestar de las hijas procreadas. Así, pues, ya que el apelante no logró demostrar la existencia de fraude, que amerite la nulidad del dictamen, nuestra intervención no procede.

Acerca de los argumentos presentados por el apelante sobre los alegados vicios en el consentimiento, opinamos que éstos tampoco justifican un pronunciamiento distinto al impugnado. Al interpretar conjuntamente, de forma liberal y de la manera más favorable posible las alegaciones de la *Demanda* y tomar como ciertos todos los hechos bien alegados en la reclamación civil, conforme lo mandata el ordenamiento procesal y su jurisprudencia interpretativa, colegimos que el TPI no incidió al emitir un dictamen desestimatorio. Incluso de haber existido el alegado vicio del consentimiento en 2018, al tiempo de presentar la *Demanda* en 2024, la causa de acción de nulidad estaba prescrita desde el 2022. Véase, Art. 1253 del Cód. Civil de 1930, 31 LPRA ant. sec. 3512. Por lo tanto, el apelante no es acreedor de su día en corte.

Decididamente, somos del criterio que la acción del presente caso, en efecto, versa sobre una moción de relevo de sentencia. En ésta, el apelante pretende retractarse del compromiso asumido de donar a sus hijas un inmueble sito en Yauco. Conforme lo esbozado, en los casos de divorcio, sólo procede el relevo de sentencia, cuando se alega y se demuestra, con prueba robusta, la ocurrencia de fraude al tribunal o la nulidad de la sentencia.

Empero, el apelante instó el reclamo en ausencia de fraude o error y luego de transcurridos seis (6) años desde que se decretó el divorcio. El alto foro ha enunciado que, salvo que el dictamen sea nulo, el recurso provisto por la Regla 49.2 de Procedimiento Civil, *supra*, debe presentarse dentro de un término razonable, y en ningún caso, transcurridos seis (6) meses de registrada la sentencia.

**IV.**

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                                   Lcda.  Lilia M. Oquendo Solís
                              Secretaria del Tribunal de Apelaciones