ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUNA RESIDENTIAL II LLC<br><br>Recurrida<br><br>v.<br><br>ANDRÉS CÓRDOVA PHELPS, NOEMÍ ROSADO FIGUEROA Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES<br><br>Peticionaria | **TA2025CE00495** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.: K CD2015-2571 CONS. K CD2015-2640<br><br>Sobre: Cobro de Dinero; Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Lebrón Nieves y el Juez Adames Soto.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico a 21 de octubre de 2025.

Comparecen ante este foro el Sr. Andrés Córdova Phelps (señor Córdova), la Sra. Noemí Rosado Figueroa y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, "los peticionarios") y nos solicitan que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 17 de septiembre de 2025. Mediante el referido dictamen, el foro primario indicó que había dictado *Sentencia*, por lo que, la firma del acuerdo transaccional quedaba fuera de los asuntos del Tribunal.

Por los fundamentos que expondremos a continuación, **EXPEDIMOS** el auto de *certiorari* y **MODIFICAMOS** la *Orden* recurrida.

---

[1] Ver Orden Administrativa OATA-2024-102 del 27 de septiembre de 2024.

I.

Según surge del expediente, el 8 de julio de 2025, el foro primario dictó *Sentencia*, luego de que las partes informaran que habían llegado a un acuerdo transaccional.[2] Así pues, el foro *a quo* detalló las siguientes estipulaciones del acuerdo, las cuales fueron anunciadas por las partes, para su estricto cumplimiento:

- La parte demandada reconoce la deuda y acuerda pagar a la demandante la suma de $165,000.00 y la demandada acepta la suma como saldo total de la deuda.

- Dicha cantidad será pagada en un plazo de 90 días, prorrogables a 60 días adicionales.

- Cada parte será responsable de sus costas y honorarios de abogado.

- La parte demandada desiste de la reconvención y de la demanda contra tercero con perjuicio, sin la imposición de costas, gastos u honorarios.

No obstante, el 11 de septiembre de 2025, los peticionarios presentaron una *Moción Informativa y Solicitud de Autorización para Consignar $165,000.00 en Cumplimiento de Sentencia Transaccional*.[3] En esencia, alegaron que luego de varias incidencias e intentos para cumplir con el acuerdo, los cuales resultaron infructuosos, solicitaron consignar el dinero en el Tribunal. Manifestaron que Luna Residential II LLC (LUNA o "parte recurrida") les remitió un acuerdo transaccional, el cual, además de los términos de la *Sentencia*, contenía una cláusula sobre confidencialidad. No obstante, la parte recurrida no estuvo de acuerdo con

---

[2] *Sentencia*, págs. 4-5 del apéndice en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] *Moción Informativa y Solicitud de Autorización para Consignar $165,000.00 en Cumplimiento de Sentencia Transaccional*, págs. 1-3 del apéndice en SUMAC.

excluir del acuerdo confidencial el expediente judicial, por lo que, le cursaron una carta informándole su intención de efectuar el pago y que de lo contrario, estarían consignándolo en el Tribunal. Así pues, solicitaron autorización para consignar el dinero y que les fuera ordenado a LUNA la entrega de los pagarés hipotecarios, so pena de que se ordene su cancelación por la vía judicial.

El 12 de septiembre de 2025, LUNA presentó una *Réplica y Oposición a "Moción Informativa […]" & Solicitud de Relevo de Sentencia por Estipulación*.[4] Mediante la misma, solicitó que se declarara nulo el contrato de transacción por vicios en el consentimiento. Esbozó que, la parte peticionaria objetó que el contrato de transacción fuera confidencial, siendo este un elemento fundamental al momento de transigir el pleito. Resaltó que, solamente se estaría beneficiando la parte peticionaria sin la correspondiente concesión recíproca de la confidencialidad.

El 15 de septiembre de 2025, la parte peticionaria presentó una *Moción Urgente de Consignación, Solicitud de Orden y Oposicion a Relevo de Sentencia*.[5] Alegó que, no era necesario otro acuerdo transaccional y que la *Sentencia* del 8 de julio de 2025, era final y firme. Asimismo, que la parte recurrida no solicitó reconsideración, ni radicó una apelación sobre dicha sentencia transaccional. Por ello, reiteró que se declarara con lugar la consignación del dinero y se ordenara a LUNA a entregar los originales de los pagarés.

---

[4] *Réplica y Oposición a "Moción Informativa […]" & Solicitud de Relevo de Sentencia por Estipulación*, págs. 17-20 del apéndice en SUMAC.
[5] *Moción Urgente de Consignación, Solicitud de Orden y Oposicion a Relevo de Sentencia*, págs. 21-25 en el apéndice en SUMAC.

Evaluadas las mociones, el 17 de septiembre de 2025, el foro primario notificó una *Orden*, mediante la cual indicó lo siguiente:[6]

> El Tribunal ya dictó Sentencia y la firma de un acuerdo entre las partes queda fuera de los asuntos que el Tribunal atendió. Por lo tanto, no queda nada que disponer por parte del Tribunal. Cualquier otro asunto que no esté contenido en la Sentencia, lo deben atender las partes y sus representantes legales.

Inconforme, el 23 de septiembre de 2025, los peticionarios presentaron el recurso de epígrafe y señalaron la comisión del siguiente error:

> Erró el Honorable TPI al omitir la declaración judicial en lo referente a la extinción de la obligación por consignación de los $165,000.00 por parte de los demandados en cumplimiento de la sentencia transaccional del 8 de julio de 2025, y no ordenar a los demandantes la entrega perentoria de los pagarés hipotecarios a la parte demandada para su oportuna cancelación, so pena de que se declaren cancelados judicialmente.

El 26 de septiembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término de quince (15) días para que presentara su oposición al recurso. A su vez, emitimos otra *Resolución* solicitándole a la parte peticionaria que presentara el apéndice completo, so pena de desestimar el recurso de epígrafe.

El 27 de septiembre de 2025, los peticionarios presentaron el apéndice conforme a lo indicado en el índice del recurso.

El 8 de octubre de 2025, LUNA presentó una *Moción de Desestimación*. En esta esbozó que, procedía la desestimación, dado que los peticionarios no incluyeron el apéndice completo.

---

[6] *Orden*, pág. 39 en el apéndice en SUMAC.

## II.

### -A-

En lo sustantivo, el *certiorari* es un recurso extraordinario discrecional expedido por un tribunal superior a otro inferior, mediante el cual el primero está facultado para enmendar errores cometidos por el segundo, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley." Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, es la disposición que delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional. Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional.

No obstante, y a pesar de que la Regla 52.1, *supra*, no lo contempla, el *certiorari* también es el recurso apropiado para solicitar la revisión de resoluciones y órdenes post sentencia*. IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). Nuestro Tribunal Supremo ha expresado que, en estos supuestos, la Regla 40 de nuestro Reglamento, *supra*, adquiere mayor relevancia pues, de ordinario, "no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada." *Íd*.

Al determinar la procedencia de la expedición de un auto de *certiorari*, este Tribunal deberá considerar, de conformidad con la Regla 40 de nuestro Reglamento, *supra*, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**-B-**

Las estipulaciones no son un sinónimo de transacción, por lo que, una estipulación no implica necesariamente la existencia de un contrato de transacción. *PR Glass Corp. v. Tribunal Superior*, 103 DPR 223, 231 (1975). Sólo cuando una estipulación cumpla con los elementos esenciales de un contrato de transacción, podremos considerarla como tal. *Mun. San Juan v. Prof. Research*, 171 DPR 219, 247 (2007).

En nuestro ordenamiento jurídico se han reconocido tres clases de estipulaciones, a saber: (1) las estipulaciones de hechos, (2) las que reconocen derechos y tienen el alcance de una adjudicación sobre tales derechos, y (3) las de índole procesal. *PR Glass Corp. v. Tribunal Superior*, 103 DPR 223, 230 (1975).

Al examinar la naturaleza de las estipulaciones nuestro Tribunal Supremo ha expresado que "[l]a estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella". *PR Glass Corp. v. Tribunal Superior*, supra, pág. 231; *Pueblo v. Suárez Alers*, 167 DPR 850, 861 (2006); *Díaz Ayala et al. v. ELA*, 153 DPR 675, 691 (2001). Éstas "persigue[n] evitar dilaciones, inconvenientes y gastos y su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica". *PR Glass Corp. v. Tribunal Superior*, supra, pág. 230. Como norma general, un juez debe aceptar los convenios y las estipulaciones que las partes presenten. *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406, 410 (1993). Una vez el tribunal aprueba una estipulación, mediante la cual se pone término a un pleito o se resuelve un incidente dentro éste, ésta obliga a las partes y tiene el efecto de cosa juzgada. *Íd.*

Por otro lado, el contrato de transacción es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio". (Citas omitidas). *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006); *Mun. San Juan v. Prof. Research*, supra; *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci*, 147 DPR 1, 5 (1998).

En nuestro ordenamiento jurídico existen dos clases de contratos de transacción: el judicial y el extrajudicial. Si las partes acuerdan eliminar la controversia mediante un acuerdo antes de comenzar el

pleito, se trata de un contrato de transacción extrajudicial. *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006); Mun. San Juan v. Prof. Research, supra; *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci*, 147 DPR 1, 5 (1998). De otro lado, si luego de haber comenzado un pleito, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, se trata de un contrato de transacción judicial que tiene el efecto de terminar el pleito. *Íd.*, citando a J.R. Vélez Torres, *Curso de Derecho Civil,* San Juan, Ed. Rev. Jur. UIAPR, 1990, T. IV, Vol. II, pág. 498.

Los contratos de transacción "produce[n] los efectos de la cosa juzgada". 31 LPRA sec. 10644. Por eso, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. UCPR,* 143 DPR 610, 627 (1997). En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones. *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 503, 512 (1988); *Sucn. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. Art. 1237 del Código Civil, 31 LPRA sec. 9971. Sobre la causa de un contrato de transacción, nuestro más Alto Foro ha expresado que "[e]n conjunto, el litigio y las recíprocas concesiones constituyen los elementos de la causa". *López Tristani v. Maldonado Carrero*, supra,

pág. 857, citando a E. López de Barba, *El Contrato de Transacción, su Resolución por Incumplimiento*, Murcia, Eds. Laborum, 2001, pág. 78.

En armonía con lo anterior, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio". S. Tamayo Haya, *El Contrato de Transacción*, Madrid, Ed. Thomson/Civitas, 2003, pág. 141. Véase, además: López de Barba, *op. cit.*, pág. 89.

Nuestro Tribunal Supremo en *Mun. San Juan v. Prof. Research*, supra, citando a Santos Briz, indicó que la "reciprocidad en las prestaciones es la base indispensable de este contrato". J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. IV, pág. 583. Por lo tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida". Tamayo Haya, *op. cit.*, pág. 210. Véase, además: *López Tristani v. Maldonado Carrero*, supra, pág. 857. Es por ello que, "[l]a consecuencia inmediata será que a falta de recíprocas concesiones no estaremos ante una transacción por falta de causa". Tamayo Haya, *op. cit.*, pág. 144.

En síntesis, al determinar si una estipulación cumple con los elementos de un contrato de transacción, es esencial examinar si las partes dispusieron de algún término a un litigio mediante concesiones recíprocas. Estas "concesiones […] pueden ser de la más diversa índole; lo fundamental es que sean mutuas". L.R. Rivera Rivera, *El contrato de transacción: sus efectos en*

*situaciones de solidaridad*, San Juan, Jurídica Ed., 1998, pág. 55. En ausencia de concesiones recíprocas, no existirá un contrato de transacción, sino una estipulación. *Mun. San Juan v. Prof. Research*, supra, pág. 241.

-C-

La consignación es una de las formas de pago reconocida en nuestro ordenamiento jurídico. Esta se define como el depósito judicial de la cosa debida. *TOLIC v. Rodríguez Febles*, 170 DPR 804, 818-819 (2007). Citando a J. Vélez Torres, *Derecho de Obligaciones*, 2da ed. rev. San Juan, Programa de Educación Continua, Universidad Interamericana, 1997, pág. 186. Particularmente, el Artículo 1131 del Código Civil de Puerto Rico de 2020, 31 LPRA 9181, dispone que:

> El deudor queda liberado de responsabilidad mediante la consignación o la oferta de la prestación debida en cualquiera de estos casos:
>
> (a) si el acreedor a quien se hace el ofrecimiento de pago se niega, sin razón, a admitirlo;
>
> (b) si el acreedor está ausente o incapacitado para recibir el pago;
>
> (c) si varias personas pretenden tener derecho a cobrar; o
>
> (d) si se ha extraviado el título de la obligación.

Cuando lo que se consigna es dinero, se deposita en la cuenta del tribunal, ante quien se deberá acreditar el depósito. 31 LPRA sec. 9183. Ahora bien, una vez realizada la consignación, para que se libere al deudor deben concurrir los siguientes requisitos: (a) debe ser previamente anunciada a las personas interesadas en el cumplimiento de la obligación; (b) debe ajustarse

estrictamente a los requisitos del pago; y (c) debe hacerse mediante el depósito de lo debido. 31 LPRA 9182.

La figura de la consignación judicial procura brindar a un deudor un mecanismo mediante el cual pueda liberarse de su obligación. *ASR v. Proc. Rel. Familia*, 196 DPR 944, 950 (2016). De esta manera, la consignación supone una forma de pago que le permite al deudor solicitar a un tribunal que ordene la cancelación de la obligación. *Íd*. Sin embargo, la liberación formal del deudor depende de que el tribunal determine que la consignación está bien hecha. *TOLIC v. Rodríguez Febles,* 170 DPR 804 (2007). Mientras el acreedor no haya aceptado la consignación o no haya recaído una declaración judicial de que está bien hecha, la obligación podrá subsistir si el deudor retira la cuantía consignada. *ASR v. Proc. Rel. Familia,* 196 DPR, pág. 950. La determinación judicial lo que hace "es declarar que la consignación está bien hecha, reconociéndole los efectos liberatorios que perseguía el deudor desde que depósito la cosa, por lo tanto, debe surtir efecto desde ese momento". *TOLIC v. Rodríguez Febles*, 170 DPR, pág. 818.

En fin, la consignación libera al deudor en dos instancias: (1) mediante la aceptación de la cuantía consignada por parte del acreedor, o (2) por vía de una declaración judicial a los efectos de que la consignación se realizó conforme a derecho. *ASR v. Proc. Rel. Familia*, 196 DPR, pág. 950. Una vez se declara que la consignación se hizo conforme a derecho, la posesión física del dinero pasa a manos del Tribunal.

### III.

Las circunstancias particulares de este caso justifican que ejerzamos nuestra discreción y expidamos el recurso para modificar la determinación recurrida. A nuestro juicio, nuestra intervención es oportuna y adecuada. Veamos.

En el caso de autos, los peticionarios alegan que incidió el foro primario al dejar inconcluso el cumplimiento con la sentencia transaccional, al no disponer expresamente la suficiencia y cancelación de la obligación por consignación y no ordenar la entrega de los pagarés hipotecarios. Por ello, solicitan se acepte la consignación de los $165,000.00 en cumplimiento de la *Sentencia* y se ordene a LUNA a que entregue los pagarés hipotecarios para su oportuna cancelación.

En cuanto al relevo de sentencia, esbozaron que las partes llegaron a un acuerdo transaccional, donde a su vez, durante el transcurso del pleito informaron que no iban a reconocer una cláusula de confidencialidad. Por ello, reiteran que habiendo una sentencia transaccional no había necesidad de firmar otro acuerdo transaccional.

Conforme a la normativa antes expuesta, se reconoce la figura del acuerdo transaccional cuando, luego de haberse iniciado un pleito, las partes pactan eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870-871.

De otra parte, el propósito de la figura de la consignación es extinguir la obligación de pago que posee el deudor. Mediante el proceso de consignación se deposita el dinero bajo el poder de la autoridad judicial, quien la retiene y en un futuro la pondrá a

disposición del acreedor. Como regla general, para que el acto de la consignación tenga el efecto de liberar al deudor, se requiere que se haga un ofrecimiento al acreedor de la suma a consignar, que el acreedor se haya negado a aceptarla y que se haya anunciado la consignación a las personas interesadas en la obligación.

Según se desprende del expediente, las partes acordaron una serie de términos y condiciones para poner fin al pleito, sin necesidad de celebrar un juicio y, por ende, sin llevarse a cabo una vista evidenciara. En este caso, el 8 de julio de 2025, el foro recurrido dictó una sentencia transaccional, la cual incluyó los siguientes acuerdos: (1) los peticionarios reconocieron la deuda y acordaron pagar a LUNA la suma de $165,000.00, además, aceptaron la suma como saldo total de la deuda; (2) dicha cantidad sería pagada en un plazo de 90 días, prorrogables a 60 días adicionales; (3) cada parte sería responsable de sus costas y honorarios de abogado; y (4) la parte peticionaria desistía de la reconvención y de la demanda contra tercero con perjuicio, sin la imposición de costas, gastos u honorarios. Entre dichos acuerdos no fue incluido alguno referente a la controversia planteada por la parte recurrida, sobre la confidencialidad del proceso, por lo que, quedó fuera de la sentencia y acuerdo transaccional acogido en dicha sentencia. Como consecuencia, no incidió el foro primario al abstenerse de intervenir con asuntos que no fueron parte de la *Sentencia,* y que ya son final y firme.

No obstante, los peticionarios acudieron al foro primario solicitando consignar la cantidad acordada de los $165,000.00, debido a que, la parte recurrida se ha

negado a aceptarla y así cumplir con la obligación impuesta en la *Sentencia*. Por tanto, el foro recurrido debió atender y resolver dicha solicitud, en lugar de concluir que no quedaba nada que disponer.

Como consecuencia, expedimos el auto de *certiorari* y devolvemos el caso al Tribunal de Primera Instancia para que atienda y acepte la consignación de fondos presentada por los peticionarios en pago de la deuda reconocida en la sentencia transaccional.

### IV.

Por los fundamentos antes expuestos, **EXPEDIMOS** y **MODIFICAMOS** la *Orden* recurrida. Devolvemos el caso al Tribunal de Primera Instancia para que atienda y acepte la consignación de fondos presentada por los peticionarios en pago de la deuda reconocida en la sentencia transaccional, y atienda cualquier otro asunto de forma consistente con nuestros pronunciamientos.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones